SCHENKOLEWSKI, APPELLANT, *v.*
CLEVELAND METROPARKS SYSTEM, APPELLEE.

[Cite as Schenkolewski v. Metroparks System (1981),
67 Ohio St. 2d   31.]

(No. 80-978 — Decided July 1, 1981.)

32

*Messrs. Steuer, Escovar & Berk Co., L.P.A., Mr. Thomas J. Escovar,* for appellant.

*Messrs. Kelley, McCann & Livingstone, Mr. Walter C. Kelley, Mr. Stephen M. O'Bryan* and *Mr. Steven N. Bulloch,* for appellee.

SWEENEY, J. Relying on existing Ohio precedent, the Court of Appeals held that appellee, a park district established under the authority of R. C. Chapter 1545, is a political subdivision of the state of Ohio which performs functions that are governmental in character, and thus is immune from tort liability. *Village of Willoughby Hills* v. *Bd. of Park Commrs.* (1965), 3 Ohio St. 2d 49; *Wolf* v. *Ohio State University Hospital* (1959), 170 Ohio St. 49; *Krause* v. *State* (1972), 31 Ohio St. 2d 132; *Thacker* v. *Bd. of Trustees of Ohio State Univ.* (1973), 35 Ohio St. 2d 49; see, also, *Kroger* v. *Bd. of Park Commrs.* (D.C.S.D. Ohio, 1980), 17 Ohio Op. 3d 158.

The long established common law rule in Ohio is that the state, being sovereign, is not amenable to suit in its own courts without its express consent. *Raudabaugh* v. *State* (1917), 96 Ohio St. 513, 514; see, generally, *Thacker* v. *Bd. of Trustees of Ohio State Univ., supra,* at 67-68 (dissenting opinion, *per* W. Brown, J.). Similarly, although the state itself has been called the "only true sovereign,"[2] under common law it was traditionally held that the benefit of the state's sovereign immunity inures with equal vigor to entities classified as instrumentalities of the state, *Thacker* v. *Bd. of Trustees of Ohio State Univ., supra,* at page 52, footnote 1, and to political subdivisions of the state, *Schaffer* v. *Bd. of Trustees* (1960), 171 Ohio St. 228 (counties).

At the same time, the law of governmental immunity of municipal corporations developed differently. As summarized in Prosser on Torts (4 Ed.), at 977-78, Section 131, municipal corporations have been regarded as having a dual character:

"On the one hand they are subdivisions of the state, endowed with governmental powers and charged with governmental functions and responsibilities. On the other they are corporate bodies, capable of much the same acts as private corporations, and having the same special and local interests and relations, not shared by the state at large. They are at one and the same time a corporate entity and a government. The law has attempted to distinguish between the two functions, and to hold that in so far as they represent the state, in their 'governmental,' 'political,' or 'public' capacity, they share its immunity from tort liability, while in their 'corporate,' 'private' or 'proprietary' character they may be liable."

In Ohio, this so-called "governmental-proprietary" distinction is reflected in a long line of cases, *e.g., Frederick* v. *Columbus* (1898), 58 Ohio St. 538; *Wooster* v. *Arbenz* (1927), 116 Ohio St. 281; *Hack* v. *Salem* (1963), 174 Ohio St. 383; *Haas* v. *Hayslip* (1977), 51 Ohio St. 2d 135.

Effective January 1, 1975, the General Assembly enacted the Court of Claims Act, R. C. 2743.01 *et seq.* The Act expressly waived the sovereign immunity of the state of Ohio, its

[2] Fuller & Casner, Municipal Tort Liability in Operation, 54 Harv. L. Rev. 437, 438-42, cited in Note, Claims against the State of Ohio: The Need for Reform, 36 U. of Cin. L. Rev. 239, 240.

departments, boards, offices, commissions, agencies, institutions and other instrumentalities, and granted consent to have the liability of such entities determined in a Court of Claims in accordance with the same rules of law applicable to suits between private parties. R. C. 2743.02; 2743.01(A). Excluded from the Act's coverage were "political subdivisions," defined as "municipal corporations, townships, counties, school districts, and all other bodies corporate and politic responsible for governmental activities only in geographic areas smaller than that of the state to which the sovereign immunity of the state attaches." R. C. 2743.01(B).

Thus, after the effective date of the Court of Claims Act, governmental tort liability extended to the state and its instrumentalities (by statute), and to municipal corporations as to their proprietary activities (under the common law). A gap in potential liability exists, however, as to those entities held to be subdivisions of the state under common law, thus beneficiaries of the state's sovereign immunity, which did not become subject to the jurisdiction of the Court of Claims under R. C. Chapter 2743. A board of park commissioners of a park district established under R. C. Chapter 1545, being a "body politic and corporate," R. C. 1545.07, responsible for governmental activities on less than a statewide basis, *Village of Willoughby Hills* v. *Bd. of Park Commrs., supra,* is one such entity.

While acknowledging that park districts are not liable for torts committed in the exercise of governmental functions, appellant urges us to adopt as law her proposition that such a district is liable for torts committed while carrying on proprietary activities.

In addressing appellant's argument we first must determine whether this court may constitutionally abrogate the immunity of a park district as to functions it engages in that are of a proprietary nature.

In 1912, Section 16, Article I of the Ohio Constitution was amended to provide that "[s]uits may be brought against the state, in such courts and in such manner, as may be provided by law." In *Raudabaugh* v. *State, supra,* this court was faced with the contention that such amendment, in and of itself, authorized suits to be brought against the state, *i.e.,* that the

provision was self-executing. The court rejected this argument, holding, in the second paragraph of the syllabus, that "statutory authority is required as a prerequisite to the bringing of suits against the state." Since that time, the principle has been steadfastly reiterated that statutory express consent is required before the state or its instrumentalities is amenable to suit. *Palumbo* v. *Indus. Comm.* (1942), 140 Ohio St. 54; *Wolf* v. *Ohio State University Hospital, supra; Schaffer* v. *Bd. of Trustees, supra; Krause* v. *State, supra; Thacker* v. *Bd. of Trustees, supra.* In recent years, however, this principle has been the subject of intensified criticism. *Thacker* v. *Bd. of Trustees of Ohio State Univ., supra,* at 62-63 (dissenting opinion, *per* Corrigan, J.)[3] and 72-78 (dissenting opinion, *per* W. Brown, J.); see, also, *Haas* v. *Hayslip, supra,* at 140-142 (dissenting opinion, *per* W. Brown, J., joined by Celebrezze and Sweeney, JJ.).

Unlike those states whose Constitutions *expressly* provide that the *legislative* branch is to direct in what manner and in what courts suits may be brought against the state, *e.g.,* Section 27, Article IV, Wisconsin Constitution; Section 231, Kentucky Constitution; Section 11, Article I, Pennsylvania Constitution, our Constitution provides simply that suits may be brought against the state as may be provided by law. Section 16, Article I, Ohio Constitution. As stated in Note, Claims Against the State of Ohio: The Need for Reform, 36 U. of Cinn. L. Rev. 239, at 241: "This type of provision gives no indication as to which branch of the government is to do the directing [or providing], although the provision is usually held not to be self-executing."

The doctrine of governmental immunity is judicially created law. *Krause* v. *State, supra,* at 134. Judicially created

[3] "Analysis of the foregoing cases and the reasoning expressed therein leads to the conclusion that***, where a tort action is brought against the state for a wrong committed by its employees or agents in the performance of a proprietary function, such an action is not within the purview of the provisions of Section 16, Article I of the Ohio Constitution, and can be maintained without the consent of the General Assembly.

"***

"Therefore, the cases cited therein [in *Wolf* v. *Ohio State University Hospital, supra*], wherein tort actions were held not to be maintainable against the state because the General Assembly had not enacted statutes consenting to suit, and the actions were based upon torts committed by state employees or agents in the discharge of proprietary functions, should be disapproved."

law is subject to judicial alteration. "[T]he principle of *stare decisis* on occasion must yield to allow for the evolutionary development of the law." *Thacker* v. *Bd. of Trustees of Ohio State Univ., supra,* at 65 (dissenting opinion, *per* Corrigan, J.); see, also, *Haas* v. *Hayslip, supra* at 142 (dissenting opinion, *per* W. Brown, J.). We may, consistent with the constitutional provision of Section 16, Article I, alter the common law doctrine of sovereign immunity as it applies to park districts because such alteration does no more than "provide by law" that certain suits may be maintained against a subdivision of the state. As concluded by W. Brown, J., in his dissenting opinion in *Thacker* v. *Bd. of Trustees of Ohio State Univ., supra,* at 77-78:

"Whether the amendment is construed as self-executing, or not self-executing,***does not affect a decision of this court to abolish governmental immunity. If the amendment was intended to be self-executing, the court would merely be achieving the same effect that was intended 50 years ago when the immunity amendment was ratified. If, on the other hand, the amendment was not intended to be self-executing and merely informed the General Assembly that it was empowered to abolish governmental immunity, the court's decision to abolish governmental immunity would merely execute the abolition by an alternative method—for the court has authority to change a judicially-created rule."

Thus, it is within our constitutional authority to modify or abrogate common law doctrines of governmental or sovereign immunity. To the extent that prior decisions of this court imply or hold that the immunity doctrine is not subject to judicial modification or abrogation, those decisions are overruled.[4]

Having so determined, we turn to the merits of appellant's contention that a park district's immunity should be abrogated to the extent that the governmental-proprietary distinction heretofore applied to municipal corporations should be applied to park districts as well.

The rationale behind distinguishing between governmental and proprietary functions in determining the tort liability

---

[4] *E.g., Raudabaugh* v. *State, supra; Palumbo* v. *Indus. Comm., supra; Wolf* v. *Ohio State Univ. Hospital, supra; Thacker* v. *Bd. of Trustees of Ohio State Univ., supra; Krause* v. *State, supra.*

of a municipal corporation is that in performing the former a city acts as the agent of the state in the exercise of sovereign powers. Proprietary functions are acts performed in the pursuit of private or corporate duties for the particular benefit of the corporation and its inhabitants. While performing these functions, municipalities do not act as agents of the state in the exercise of its sovereign powers and the corporation is liable for its negligent acts. *Nanna* v. *Village of McArthur* (1974), 44 Ohio App. 2d 22; *Wooster* v. *Arbenz, supra* (116 Ohio St. 281).

A board of commissioners of a park district bears certain similarities to a municipal corporation. Like a municipal corporation, such a board has a corporate nature, and may sue and be sued as provided by law. R. C. 1545.07. Clearly it engages in some activities which promote the state's sovereign interests. *Willoughby Hills* v. *Bd. of Park Commrs., supra.*[5] Nevertheless, like cities, park districts may engage in activities which, as here, cannot be characterized as governmental, *infra.*

When a park district's activities go beyond governmental functions, *i.e.,* when it acts in a proprietary nature, there is little or no justification for extending the benefits of the state's sovereign immunity to it. As to such activities the conclusion is justified that the park district is more than an arm of the state. Certainly a park district cannot be deemed "simply a division of the executive branch" of the state, nor is it "dependent upon funds appropriated by the legislature." See Note, The Applicability of Sovereign Immunity to Independent Public Authorities, 74 Harv. L. Rev. 714, 716. Having entered into activities ordinarily reserved to the field of private enterprise, a park district should be held to the same responsibilities and liabilities as are private citizens. Cf. *Thacker* v. *Bd. of Trustees of Ohio State Univ., supra,* at 59-60 (dissenting opinion, *per* Corrigan, J.).

The appropriateness of such a conclusion is perhaps most pronounced where, as in this cause, alleged park district liability arises out of functions which are fee-supported. "There is a

---

[5] See R. C. 1545.11 (power of eminent domain in order to acquire lands for "conversion into forest reserves and for the conservation of the natural resources of the state"); R. C. 1545.13 (power to employ park police officers); R. C. 1545.20 and 1545.21 (power to levy taxes).

discernible and justifiable trend toward eliminating the immunity when the burden of liability falls less upon the general taxpayer and more upon the users of a particular facility." 74 Harv. L. Rev., *supra,* at 720-721. In such instances fees may be adjusted to meet extra expenses incurred as a result of procuring liability insurance or satisfying judgments. *Id.,* at 717.

The injustice and irrationality of the doctrine of sovereign immunity has been noted many times both by courts and legal commentators.[6] According to a survey of the law prepared in 1976, only nine states have adhered to the traditional common-law immunity doctrines as to local governmental units.[7] Harley & Wasinger, Governmental Immunity: Despotic Mantle or Creature of Necessity, 16 Washburn L. J. 12, 34. Since that survey, two of those nine states have altered or abrogated the doctrine.[8] Thus, our holding today that the defense of governmental immunity is not available to a board of commissioners of a park district established pursuant to R. C. Chapter 1545 where liability is alleged to have arisen out of the exercise of a proprietary function is consistent with the law of a vast majority of states.

Having determined that a park district is amenable to suit for tortious conduct arising out of the exercise of proprietary functions, it remains for us to determine whether the operation of a zoo is such a function.

The syllabus in *Moloney* v. *Columbus* (1965), 2 Ohio St. 2d 213, provides:

[6] See, *e.g., Hack* v. *Salem* (1963), *supra,* at 399-400 (concurring opinion, *per* Gibson, J.); *Thacker* v. *Bd of Trustees of Ohio State Univ., supra,* at 66 (dissenting opinion, *per* W. Brown, J.); *Haas* v. *Hayslip, supra,* at 143 (dissenting opinion, *per* W. Brown, J.); Annotation, Municipal Immunity from Liability for Torts, 60 A.L.R. 2d 1198; 3 Davis Administrative Law Treatise 434, 435, Section 25.01 ("[N]early every commentator who considers the subject vigorously asserts that the doctrine of sovereign immunity must go."); *Muskopf* v. *Corning Hospital* (1961), 55 Cal. 2d 211, 216, 359 P. 2d 457 ("an anachronism, without rational basis, * * * [that] has existed only by the force of inertia"); *Molitor* v. *Kaneland Community Unit Dist.* (1959), 18 Ill. 2d 11, 25, 163 N.E. 2d 89 (Doctrine "is unjust, unsupported by any valid reason, and has no rightful place in modern day society.")

[7] Delaware, Louisiana, Maine, Maryland, Missouri, Ohio, South Carolina, South Dakota, and Utah.

[8] *Davies* v. *City of Bath* (Me. 1976), 364 A. 2d 1269; *Jones* v. *State Highway Comm.* (Mo. 1977), 557 S.W. 2d 225.

"A municipality which voluntarily owns and operates a zoological park primarily for the benefit and accommodation of those of its citizens who might be interested does so in the exercise of a proprietary function and is answerable for its tortious conduct.***"

The court in *Moloney* noted, in applying the traditional tests used to distinguish between proprietary and governmental functions, that the obligations of sovereignty do not include the provision of a zoo, and that the benefits of a zoo inure primarily to the inhabitants of the municipality rather than to the state and its citizenry as a whole. Furthermore, "the benefits realized through the maintenance of the zoo inure primarily to those citizens who are interested in that activity and who are willing to pay an admission fee either by paying a cash fee upon admittance or purchasing a membership card, and those citizens who either do not possess or are unwilling to pay an admission fee are excluded from the benefits." *Moloney* v. *Columbus,* at 219.

These observations may as well be made of zoos operated by a board of commissioners of a park district. Appellant's argument that the operation of a zoo by a regional park district is a proprietary function is well taken.[9]

For the foregoing reasons the judgment of the Court of Appeals is reversed and the cause remanded to the trial court for further proceedings.

*Judgment reversed and*
*cause remanded.*

CELEBREZZE, C. J., W. BROWN and C. BROWN, JJ., concur.

P. BROWN, LOCHER and STEPHENSON, JJ., dissent.

STEPHENSON, J., of the Fourth Appellate District, sitting for HOLMES, J.

PAUL W. BROWN, J., dissenting. In a long and unbroken line of cases, this court has held that "[t]he provision of the Ohio Constitution, Article I, Section 16, as amended September 13, 1912, that 'Suits may be brought against the

---

[9] See, also, Annotation, Governmental Liability from Operation of Zoo, 92 A.L.R. 3d 832.

40

state, in such courts, and in such manner, as may be provided by law,' is not self-executing; and statutory authority is required as a prerequisite to the bringing of suits against the state." *Raudabaugh* v. *State* (1917), 96 Ohio St. 513, paragraph two of the syllabus; *Palumbo* v. *Indus. Comm.* (1942), 140 Ohio St. 54; *State, ex rel. Williams,* v. *Glander* (1947), 148 Ohio St. 188; *Wolf* v. *Ohio State University Hospital* (1959), 170 Ohio St. 49; *Krause* v. *State* (1972), 31 Ohio St. 2d 132; and *Thacker* v. *Bd. of Trustees of Ohio State Univ.* (1973), 35 Ohio St. 2d 49.

As the majority points out, when the General Assembly enacted the Court of Claims Act, it specifically provided that it was not waiving the governmental immunity of "political subdivisions." R. C. 2743.01(B); R. C. 2743.02. Because a park district organized under R. C. 1545.01 *et seq.* is a "political subdivision" of the state, *Village of Willoughby Hills* v. *Bd. of Park Commrs.* (1965), 3 Ohio St. 2d 49, it is immune from tort liability under the doctrine of governmental immunity, and this immunity was not waived by the Court of Claims Act.

"Although the doctrine of governmental immunity was judicially created, it is not now subject to judicial reexamination. When the people of Ohio, in 1912, adopted Section 16 of Article I as part of the organic law of this state, they foreclosed to this or any other court the authority to examine the 'soundness' or 'justice' of the concept of governmental immunity. The people of Ohio placed that policy decision in the hands of the General Assembly, and the merits or demerits of granting or withholding consent are to be debated and determined by that body alone. It is not within the province of the judiciary to make that determination. Nor can we make that constitutional provision meaningless. The alternative remedy is by a constitutional amendment." *Krause* v. *State, supra,* at 147. Furthermore, the court pointed out in *Thacker* v. *Bd., supra,* at 54, "questions concerning the governmental or proprietary nature of state activity were rendered irrelevant by *Krause.*"

The issue of governmental immunity is for the General Assembly to decide. In enacting, the Court of Claims Act, the General Assembly specifically declined to waive the governmental immunity attaching to political subdivisions of the state

such as park districts. Therefore, I would affirm the decisions of the lower courts which dismissed the suit against the park district because it was immune from suit.

For the foregoing reasons, I dissent.

LOCHER and STEPHENSON, JJ., concur in the foregoing dissenting opinion.