STROHOFER, EXECUTRIX, ET AL., APPELLANTS, *v.* CITY OF CINCINNATI, APPELLEE.
MASCARI ET AL., APPELLANTS, *v.* CHAN, APPELLANT, ET AL.; CITY OF COLUMBUS, APPELLEE.

[Cite as Strohofer *v.* Cincinnati (1983), 6 Ohio St. 3d 118.]

(Nos. 82-674 and 82-1504—Decided August 3, 1983.)

*Messrs. Spraul & Reyering, Mr. Thomas C. Spraul* and *Mr. Patrick J. Cronin,* for appellants in case No. 82-674.

*Mr. Richard A. Castellini,* city solicitor, and *Mr. Daniel J. Schlueter,* for appellee in case No. 82-674, and urging affirmance for *amicus curiae,* city of Cincinnati, in case No. 82-1504.

*Charles R. Andrews Co., L.P.A.,* and *Mr. Charles R. Andrews,* for appellants Mascaris, in case No. 82-1504.

*Messrs, Knepper, White, Arter & Hadden, Mr. Louis E. Gerber* and *Ms. Sally Ann Walters,* for appellant Chan, in case No. 82-1504.

*Mr. Gregory S. Lashutka,* city attorney, *Mr. Patrick M. McGrath* and *Ms. Deborah S. Everson,* for appellee city of Columbus, in case No. 82-1504.

*Mr. Harry E. Klide,* director of law, urging affirmance for *amicus curiae,* city of Canton, in case No. 82-1504.

*Mr. John D. Maddox,* director of law, urging affirmance for *amicus curiae,* city of Cleveland, in case no. 82-1504.

*Mr. Sheldon M. Rosen,* director of law, urging affirmance for *amicus curiae,* city of Toledo, in case No. 82-1504.

*Mr. Thomas G. Petkewitz,* director of law, urging affirmance for *amicus curiae,* city of Dayton, in case No. 82-1504.

*Mr. Edward J. Riegler,* director of law, urging affirmance for *amicus curiae,* city of Akron, in case No. 82-1504.

*Mr. Edward N. Sobnosky,* director of law, urging affirmance for *amicus curiae,* city of Youngstown, in case No. 82-1504.

*Messrs. Calfee, Halter & Griswold* and *Mr. John E. Gotherman,* urging affirmance for *amicus curiae,* Ohio Municipal League, in case No. 82-1504.

J. P. CELEBREZZE, J. In each of these cases we are asked to determine whether appellant's claims against the respective municipalities for damages arising from the allegedly tortious design and placement of traffic control devices, are barred by the doctrine of sovereign immunity.

In view of our recent decision in *Haverlack* v. *Portage Homes, Inc.* (1982), 2 Ohio St. 3d 26, we hold that they are not. Therein we abrogated the doctrine of sovereign immunity and held at paragraph two of the syllabus that "[t]he defense of sovereign immunity is not available, in the absence of a statute providing immunity, to a municipal corporation in an action for damages alleged to be caused by the negligent operation of a sewage treatment plant."

Relying on the syllabus, appellee city of Columbus and the *amici* argue that the holding in *Haverlack* is limited to liability for damages caused by the negligent operation of a sewage treatment plant.

It is clear from our decision, however, that we rejected the continued viability of the doctrine of sovereign immunity as a defense. We reached that result upon finding that attempts to apply the doctrine resulted in confusion and unpredictability in the law; that its application created unjust results; and that it was unnecessary because municipalities can protect themselves from liability in the same manner as private businesses. We concluded that, "[s]*tare decisis* alone is not a sufficient reason to retain the doctrine which serves no purpose and produces such harsh results. Therefore, we join with the other states in abrogating the doctrine." *Id.* at 30.

The facts presented in the cases herein do not dissuade us from that conclusion. To the contrary, they illustrate the absurd consequences which result from attempts to distinguish proprietary from governmental functions in determining whether a municipality is amenable to suit. The courts below both found that the design and placement of traffic control devices were governmental functions, the performance of which could not give rise to liability. At the same time they conceded that the appellants would have had actionable claims had they alleged a failure to repair or maintain the traffic control devices in question.

R.C. 723.01 imposes upon municipalities the duty to keep their streets "* * * open, in repair, and free from nuisance." It is difficult to conceive of a greater nuisance than improperly and dangerously directing traffic through a heavily travelled intersection. It is equally difficult to conceive of a justification for shielding a municipality from liability in an action alleging such conduct, solely because the conduct involved was the design and placement of traffic control devices rather than their repair and maintenance.

In the absence of a statute providing immunity, the defense of sovereign immunity is not available to a municipality in an action for damages alleged to be caused by the tortious conduct of the municipality.

Appellees cite no statute, nor does our research disclose one, which grants them immunity from liability for damages arising from the design and placement of traffic control devices.

Accordingly, the judgments of the courts of appeals are reversed and the causes are remanded to the trial courts for further proceedings.

*Judgments reversed*
*and causes remanded.*

In case No. 82-674:
CELEBREZZE, C.J., COOK, SWEENEY and C. BROWN, JJ., concur.

LOCHER and HOLMES, JJ., dissent.

COOK, J., of the Eleventh Appellate District, sitting for W. BROWN, J.

In case No. 82-1504:
CELEBREZZE, C.J., SWEENEY and C. BROWN, JJ., concur.

WHITESIDE, J., concurs separately.

LOCHER and HOLMES, JJ., dissent.

WHITESIDE, J., of the Tenth Appellate District, sitting for W. BROWN, J.

WHITESIDE, J., concurring. Irrespective of whether I previously might have found otherwise, *stare decisis* compels the result this court reaches today since only last December this court held to the same effect in *Haverlack* v. *Portage Homes, Inc.* (1982), 2 Ohio St. 3d 26 which was recently followed and extended in *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31.

Unfortunately, this court addresses only the question of availability of sovereign immunity with respect to tortious conduct of a municipal corporation, rather than the basic underlying issue of sovereign immunity.

Sovereign immunity for municipal corporations has been a matter of confusion and inconsistency for more than a century. In 1840, it was held that a municipal corporation is no different from an individual with respect to liability for injury. *Rhodes* v. *Cleveland* (1840), 10 Ohio 159. See, also, *McCombs* v. *Akron* (1846), 15 Ohio 474. In 1854, however, the governmental-proprietary distinction was suggested in *Dayton* v. *Pease* (1854), 4 Ohio St. 80, but in a much more restricted sense than in later cases, and was adopted in 1861 in *Western College* v. *Cleveland* (1861), 12 Ohio St. 375. See, also, *Wheeler* v. *Cincinnati* (1869), 19 Ohio St. 19, and *Frederick* v. *Columbus* (1898), 58 Ohio St. 538.

In 1919, sovereign immunity for municipal corporations was severely limited similar to the result reached in *Haverlack, supra,* and urged in former Judge Gibson's concurrence in *Hack* v. *Salem* (1963), 174 Ohio St. 383, 391 [23 O.O.2d 34]. Thus, *Frederick, supra,* was overruled in *Fowler* v. *Cleveland* (1919), 100 Ohio St. 158, and liability imposed upon municipal corporations for wrongful, ministerial acts.[1]

The limitation on municipal sovereign immunity was short-lived for in 1922, *Fowler* was overruled and *Frederick* reinstated in *Aldrich* v. *Youngstown* (1922), 106 Ohio St. 342, which reestablished the governmental-proprietary distinction for application of sovereign immunity to municipal corporations. This distinction has been predicated upon the assumption that

---

[1] The syllabus of *Fowler* states in part:

"2. It is not the policy of government that the state or any of its subdivisions shall, in the absence of special provision, indemnify persons for loss or damage either from lack of proper laws or administrative provisions; or from inadequate enforcement of laws or the inefficient operation of such provisions.

"3. But where a wrongful act which has caused injury was done by the servants or agents of a municipality in the performance of a purely ministerial act which was the proximate cause of the injury without fault on the part of the injured person *respondeat superior* applies and the municipality is liable."

a municipal corporation is somehow different from other governmental agencies, which are political subdivisions (such as counties or school districts) because it is a "public corporation," as well and, therefore, must have some different attributes of a corporate nature like those of a private corporation.

Whether there was once some substance to this distinction in earlier times when a municipal corporation received a legislative corporate charter, it has not existed since 1912 when Article XVIII of the Ohio Constitution, was adopted. Although Section 2 of Article XVIII does require laws for the incorporation of cities and villages, Sections 3 through 7 of Article XVIII set forth the powers to be exercised, and specifically Section 3 confers the right of "local self-government." In such exercise of local self-government, necessarily the city or village is an agency of the state, making and executing local policy determinations in much the same way that the General Assembly makes statewide policy determinations and the executive branch of the state government executes strict statewide policy determinations. It is difficult to conceive of any logical basis for having a governmental-proprietary distinction for municipal corporations, but not for the state itself, nor for other political subdivisions such as counties and school districts.

Treating municipal corporations like the state and other political subdivisions, however, would result either in full sovereign immunity for municipal corporations or imposition of liability upon the state and other political subdivisions with respect to so-called proprietary functions. The former result would be inconsistent with almost every prior decision of this court upon the issue. Nor is compounding the governmental-proprietary dichotomy a better solution, especially since it was predicated upon a theory of dual functions of municipal corporations—one private and the other governmental.[2]

Recognition of the intent of the electorate some seventy-one years ago when Section 16, Article I, Ohio Constitution, was amended to provide that "suits may be brought against the state * * *" would result in complete abolition of sovereign immunity. Because the sentence added by the amendment concluded with "in such courts and in such manner, as may be provided by law," the implementation of the expressed will of the electorate was held to be dependent upon legislative action creating special courts and special procedure for suits against the state in *Raudabaugh* v. *State* (1917), 96 Ohio St. 513. Amended Section 16, Article I, was found "not self-executing." Although he joined in this decision, the comment of former Judge Wanamaker, a noted municipal home-rule proponent, in his dissent in *Aldrich, supra,* overruling *Fowler, supra,* is of interest. Judge Wanamaker stated, at 353, in *Aldrich:* "[T]he new amendment to the constitution * * * plainly intended that the state should be no longer immune from its full measure of liability for any wrong done to any of its citizens." In protesting the overruling of *Fowler,* Judge Wanamaker, at 355, referred to "the old

---

[2] Nevertheless, the governmental-proprietary distinction was extended to a political subdivision in *Schenkolewski* v. *Metroparks System* (1981), 67 Ohio St. 2d 31 [21 O.O.3d 19].

proposition—the sovereign people may make what constitution they please, but give me the supreme court, that construes and applies that constitution, and I care not who makes the constitution or what it contains."

In *Raudabaugh, supra,* the will of the people was thwarted, and legislative action became a prerequisite to abolition of sovereign immunity just as it had before. Not until *Raudabaugh* was overruled in part in *Schenkolewski* v. *Metroparks System* (1981), 67 Ohio St. 3d 31 [21 O.O.3d 19], could even this Supreme Court abolish sovereign immunity which had been a common-law creation. *Schenkolewski* left intact that portion of the second paragraph of the syllabus of *Raudabaugh* which held Section 16, Article I, not to be self-executing. The amendment submitted by the Constitutional Convention of 1912 added the following sentence to Section 16, Article I: "Suits may be brought against the state, in such courts and in such manner, as may be provided by law." There is nothing in the convention proceedings suggesting that the amendment was made only to authorize the General Assembly to abolish sovereign immunity which is the import of the *Raudabaugh* holding. See Proceedings and Debates, Constitutional Convention of Ohio 1431-1432 and 1919-1920. Originally the proposal concluded with the words: "as may be directed by law," but the word "directed" was changed to "provided" after referral to the Committee on Arrangement and Phraseology following approval on the first reading. There was little debate; but what there was gives no indication that the provision would not be self-executing.

As suggested in *Thacker* v. *Bd. of Trustees* (1971), 31 Ohio App. 2d 17, 22 [60 O.O.2d 65], a more appropriate conclusion is that Section 16, Article I, Ohio Constitution is "a waiver of sovereign immunity subject to the right of the legislature to limit the courts and manner in which suits against the state could be brought." Since 1975, R.C. Chapter 2743 has accomplished that purpose with respect to the state. However, I would join in the overruling of *Raudabaugh* and, giving full effect to the provision of Section 16, Article I, adopted by the people in September 1912, to permit suits to be brought against the state and its political subdivisions.

LOCHER, J., dissenting. The majority does not properly address the actual issue in this case: whether each of the alleged design defects constitutes a nuisance under R.C. 723.01. In *Fankhauser* v. *Mansfield* (1969), 19 Ohio St. 2d 102 [48 O.O.2d 103], this court held in the syllabus:

"A petition, alleging that a municipality failed to repair an electric traffic signal after receiving *reasonable notice* that the signal was not functioning properly and that the malfunction caused a dangerous condition which caused the automobile accident resulting in plaintiff's injuries, states a cause of action against the municipality for maintaining a nuisance in violation of Section 723.01, Revised Code. (Paragraph five of the syllabus of *Tolliver* v. *Newark,* 145 Ohio St. 517 [31 O.O. 179], overruled; *Imfeld* v. *Hamilton,* 100 Ohio St. 11, overruled.)" (Emphasis added.)

The majority, however, summarily dismisses this precedent without cita-

tion: "It is equally difficult to conceive of a justification for shielding a municipality from liability in an action alleging such conduct, solely because the conduct involved was the design and placement of traffic control devices rather than their repair and maintenance." Yet the fact remains that the majority fails to consider whether the municipalities in these cases received any *reasonable notice* of the alleged design defect *before* injuries resulted.

*Fankhauser,* therefore, is indistinguishable, and the court should affirm each of these cases. The majority circumvents *Fankhauser* and R.C. 723.01—ironically, a provision which *creates* liability for municipalities—in order to reverse. The vehicle used for that purpose is *Haverlack* v. *Portage Homes, Inc.* (1982), 2 Ohio St. 3d 26.

I voiced my concern in *Haverlack* over the discrepancy between the syllabus and the opinion in that case. See 2 Ohio St. 3d, at 32 (Locher, J., dissenting). The *Haverlack* opinion, therefore, is advisory, and " '* * * it is well-settled that this court does not indulge itself in advisory opinions.' *Armco, Inc.* v. *Pub. Util. Comm.* (1982), 69 Ohio St. 2d 401, 406 [23 O.O.3d 361], * * *." *Cascioli* v. *Central Mut. Ins. Co.* (1983), 4 Ohio St. 3d 179, 183. Nevertheless, a majority of this court has repeatedly employed *dicta* to extend *Haverlack* beyond the law stated in the syllabus. See, *e.g., Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31 (case No. 82-810); *King* v. *Williams* (1983), 5 Ohio St. 3d 137 (case No. 82-1151).

In all of this, there remains a fundamental flaw in the majority analysis. That is, the majority of this court fails to appreciate the constitutional dimension of the issue of sovereign immunity. Section 16, Article I of the Ohio Constitution provides in part: "Suits may be brought against the state, in such courts and in such manner, as may be provided by law."

The critical error in *Haverlack* was its *dictum* inverting the role of the General Assembly and stating that there is to be no immunity. 2 Ohio St. 3d, at 30. Justice Paul W. Brown, in his dissenting opinion, thoroughly examined and summarized the constitutional history and precedents of this court which require that a statute eliminate immunity both for the state and its subdivisions in *Schenkolewski* v. *Metroparks System* (1981), 67 Ohio St. 2d 31, 39 *et seq.* [21 O.O.3d 19]. "The issue of governmental immunity is for the General Assembly to decide. In enacting, the Court of Claims Act, the General Assembly specifically declined to waive the governmental immunity attaching to political subdivisions of the state * * *." *Id.* at 40. I continue to adhere to the minority position in *Schenkolewski.*

We, the judiciary, therefore, should confine our role to review of bona fide legislative acts rather than the issuance of judicial legislation. In particular, we should leave resolution of the issue of sovereign immunity in the hands of the General Assembly—where the people have intended that it should be since 1912. The new order, however, will bring about grave consequences for the people—whom the Constitution is intended to protect—as well as individual political subdivisions. That is the great tragedy of this and other cases which have rejected the doctrine of sovereign immunity.

126

Accordingly, I dissent from the majority holdings, and I would affirm the decisions of the court of appeals.

HOLMES, J., concurs in the foregoing dissenting opinion.

HOLMES, J., dissenting. As I stated in my opinion in the recent decision in *King* v. *Williams* (1983), 5 Ohio St. 3d 137, 141, I continue to adhere to my belief that the defense of sovereign immunity should be abrogated solely by the General Assembly.[3] However, I write here to elaborate upon what I consider are three factors neglected by this court in its opinions abrogating the defense.

First, there is the question of whether the change should be retroactive or prospective. The majority in these cases has chosen to make the abrogation of sovereign immunity retroactive. In my opinion, this is against both the weight of authority from other jurisdictions, and reason.

Generally, decisions of this court which overrule former decisions are applied retroactively. See *State, ex rel. Bosch,* v. *Indus. Comm.* (1982), 1 Ohio St. 3d 94, 98; *Peerless Electric Co.* v. *Bowers* (1955), 164 Ohio St. 209, 210 [57 O.O. 411]. Nevertheless, there are instances where this court has decided to apply a new rule of law prospectively only. See, *e.g., Wolfe* v. *Wolfe* (1976), 46 Ohio St. 2d 399, 421-422 [75 O.O.2d 474]. It is my opinion that if the defense of sovereign immunity must be abrogated at all, it should be done prospectively only.[4]

The doctrine of sovereign immunity has been a long standing principle of law in this state. To abolish it retroactively would deny municipalities that have relied upon it the opportunity to make arrangements to meet the new liability to which they are subject. The availability of liability insurance has been used in recent years to justify the dramatic expansion of tort liability. Yet, we impose liability on municipalities without allowing them the opportunity to obtain liability insurance. Further, this immunity should be annulled prospectively so that the General Assembly will be given an opportunity to act upon our decision. It is that branch of government which is best equipped to balance competing considerations of public policy. Lastly, the prospective abolition of this defense would be in line with the overwhelming weight of authority from other jurisdictions that have considered this question. See, *e.g., Nieting* v. *Blondell* (1975), 306 Minn. 122, 235 N.W. 2d 597; *Holytz* v. *Milwaukee* (1962), 17 Wis. 2d 26, 115 N.W. 2d 618; *Evans* v. *Bd. of Cty. Commrs.* (1971), 174 Colo. 97, 482 P. 2d 968; *Merrill* v. *Manchester* (1974),

---

[3] Ohio would not have been alone if this court had decided to retain municipal immunity. See, *e.g., Dugan* v. *Burlington* (1977), 135 Vt. 303, 375 A. 2d 991; *Transportation, Inc.* v. *Falls Church* (1979), 219 Va. 1004, 254 S.E. 2d 62; *Tucker* v. *Kershaw Cty. School Dist.* (1981), 276 S.C. 401, 279 S.E. 2d 378; *Austin* v. *Baltimore* (1979), 286 Md. 51, 405 A. 2d 255.

[4] There is, of course, no federal constitutional barrier to such an application. See *Great Northern Ry. Co.* v. *Sunburst Oil & Refining Co.* (1932), 287 U.S. 358.

114 N.H. 722, 332 A. 2d 378; *Willis* v. *Dept. of Conservation & Economic Dev.* (1970), 55 N.J. 534, 264 A. 2d 34; *Kitto* v. *Minot Park Dist.* (N.D. 1974), 224 N.W. 2d 795; *Oroz* v. *Bd. of Cty. Commrs.* (Wyo. 1978), 575 P. 2d 1155; *Smith* v. *State* (1970), 93 Idaho 795, 473 P. 2d 937.

Second, I disagree with the court's open-ended abolition of municipal immunity. There are certain activities undertaken by municipalities which should, even in the absence of general immunity, still be given immunity. When a municipality acts in a legislative or judicial capacity, it must be immune from suit.

In addition to immunity for judicial and legislative actions, there is a second area of governmental activity which should remain immune. This second limitation on the abolition of municipal immunity should be for discretionary actions of governmental employees which involve the essentials of government. The very good reason for this exception is that governmental officials should be able to carry out the essential functions of government without the fear of being second-guessed by the courts for the exercise of free and independent judgment in so acting. To hold municipalities liable in these circumstances would stifle the process of municipal government.[5]

Adoption of these exceptions to the abrogation of municipal immunity would put Ohio in line with the position adopted by other jurisdictions and advocated by commentators. See, *e.g., Merrill* v. *Manchester, supra; Willis* v. *Dept. of Conservation & Economic Dev. supra; Oroz* v. *Bd. of Cty. Commrs., supra; Parish* v. *Pitts* (1968), 244 Ark. 1239, 429 S.W. 2d 45; *Spanel* v. *Mounds View School Dist. No. 621* (1962), 264 Minn. 279, 118 N.W. 2d 795; *Spencer* v. *General Hospital* (C.A. D.C. 1969), 425 F. 2d 479; *Kitto* v. *Minot Park Dist. supra; Lipman* v. *Brisbane Elementary School Dist., supra;* 4 Restatement of the Law 2d 406, Torts, Section 895C.[6]

Lastly, I wish to comment on what is the effect of abolishing sovereign immunity. The nature of an immunity is not to deny that a defendant's conduct is tortious; rather, an immunity absolves the defendant from liability because of its status. Prosser, Law of Torts (4 Ed. 1971) 970. Hence, the abolishment of sovereign immunity does not impose duties upon municipalities. Whether a municipality is under a duty, in a given case, is dependent upon factors other than sovereign immunity. Cf. *Savransky* v. *Cleveland* (1983), 4 Ohio St. 3d 118.

---

[5] With respect to what are legislative and quasi-judicial actions, courts may be given guidance from the jurisprudence surrounding R.C. Chapter 2506. Discretionary actions are much broader. It is beyond the scope of this dissent to attempt to categorize these actions. However, I find particularly illuminating *Riss* v. *New York* (1968), 22 N.Y. 2d 579, 293 N.Y. Supp. 2d 897 (municipality not liable for refusal to provide police protection upon request); and *Lipman* v. *Brisbane Elementary School Dist.* (1961), 55 Cal. 2d 224, 11 Cal. Rptr. 97, 359 P. 2d 465 (no liability for asserted defamation of employee).

[6] In the past this court recognized that even in the absence of immunity, a municipality was not liable for legislative acts. *Superior Uptown* v. *Cleveland* (1974), 39 Ohio St. 2d 36 [68 O.O.2d 21].

In summation, I continue to adhere to the opinion that if governmental immunities are to vanish, the General Assembly should hold the wand. However, in light of this court's decision to abrogate it, I wish to emphasize three considerations. First, any abrogation should be prospective. Second, municipalities should remain immune for their legislative, judicial and discretionary acts. Third, the abrogation of sovereign immunity should not impose independent duties upon municipalities. Accordingly, I dissent.