TADDEO et al., Appellants,

v.

ESTATE OF ELLIS et al.; City of Elyria, Appellee.

[Cite as *Taddeo v. Estate of Ellis* (2000), 144 Ohio App.3d 235.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 99CA007445.

Decided Sept. 6, 2000.

*Charles J. Pawlukiewicz,* for appellants.

*Paul E. Blevins,* for appellee.

BATCHELDER, Presiding Judge.

Appellant, Frances G. Taddeo, in her individual capacity and as administrator of the Estate of Tammy Marie Ritsko (hereinafter referred to as "the Estate"), appeal the decision of the Lorain County Court of Common Pleas, granting summary judgment in favor of the city of Elyria ("Elyria"), appellee. We affirm.

## I

State Route 57 ("Rte. 57") is a limited access divided highway that runs through the geographic boundaries of Elyria in Lorain County, Ohio. Rte. 57 generally has two lanes of traffic in each direction, which are separated by a median. Just west of the intersection of Gulf Road and Rte. 57 ("the intersection"), the eastbound lanes of Rte. 57 widen to a total of four lanes. Similarly, just east of the intersection, the two westbound lanes of Rte. 57 widen to three lanes of travel. At the intersection, northbound Gulf Road is three lanes wide. The innermost northbound lane is for left turns only. The center lane can be used for through travel or left turns onto westbound Rte. 57. The outermost northbound lane is a through and right-turn option lane. This intersection is among the busiest in Elyria.

The painted lane line, which separates the left turn only lane and the through/left turn option lane on Gulf Road, is extended through the intersection and connects the northbound left turn lanes to the westbound lanes of Rte. 57. This dual left turn lane extension line was installed to guide motorists through the intersection. The extension line is a dashed, white semi-circular line, painted on the roadway using a mixture of white paint and glass beads. The glass beads reflect the light from the headlights of the vehicles making a left turn, and thus, increase the visibility of the extension line at night. Traffic traveling through the intersection routinely causes the glass beads to deteriorate and lose their reflectivity. Elyria routinely repaints this line twice per year, in the spring and fall, unless the weather is extremely poor. To get the best results when reapplying the paint, certain weather conditions must be present, such as low humidity and warm temperatures. This line was last repainted in August 1995, approximately six to seven months prior to the accident.

West of the intersection, a "Keep Right" sign is mounted in the median of Rte. 57, facing the westbound traffic of Rte. 57. The intersection is also fully lit by streetlights at night.

On March 22, 1996, at approximately 10:00 p.m., Patty Ellis was driving northbound on Gulf Road. As she approached the intersection of Gulf Road and Rte. 57, Ellis pulled into the left-turn-only lane and stopped at the red light. When the light turned green, Ellis turned left to enter the westbound lanes of

Rte. 57, but instead, cut her turn short and entered into the eastbound lanes of Rte. 57. At the time, Ellis was highly intoxicated, having a BAC of 0.16. Ellis traveled for approximately four-tenths of a mile on eastbound Rte. 57 before colliding head-on with Ritsko. Both Ellis and Ritsko died as a result of the accident. At the time of the accident, Ritsko was a senior in high school.

On June 7, 1996, the Estate filed an action against the Estate of Patty Joanne Ellis ("Ellis") and S.P.Y. Enterprises, Inc., d.b.a. The Warehouse, Ltd., in the Lorain County Court of Common Pleas for the wrongful death of Tammy Ritsko and the resulting emotional distress suffered by her mother, Taddeo. On January 21, 1997, the Estate filed an additional complaint against the city of Elyria, claiming that Tammy Ritsko's death was proximately caused by Elyria's failure to keep the roadway open, in repair, and free from nuisance.[1] The complaint also alleged that as a result of Ritsko's death, her mother, Taddeo, suffered severe emotional distress. These two cases were consolidated on March 6, 1997.

On April 21, 1999, Elyria filed its second motion for summary judgment, arguing that the Estate's claims were barred by governmental immunity, as the design and condition of the intersection were the result of discretionary decisions. In the alternative, Elyria contended that if immunity did not apply to bar the Estate's claims, Ellis's conduct broke the chain of proximate causation, and therefore, Elyria is not liable as a matter of law. In support of its motion, Elyria supplied the trial court with the affidavits of Craig Sampson and Charles Fair, the report of Jackman Consultants produced by the Estate, and the accident investigation report of the Elyria Police Department. On May 14, 1999, the Estate responded in opposition and moved to strike certain evidentiary material presented by Elyria, namely certain paragraphs of the affidavit of Sampson and certain pages[2] of the accident investigation report of the Elyria Police Department. The Estate objected to the Sampson affidavit because Elyria did not timely identify Sampson as an expert or submit an expert report as required by Loc.R. 14.1, and the affidavit did not disclose adequate qualifications to support his opinions. See Evid.R. 702. The Estate also urged that select portions of the police report be stricken as these portions contain inadmissible hearsay. On

---

1. The Estate also claimed that an unknown police officer for the city of Elyria failed to stop Ellis's vehicle despite observing the Ellis vehicle weaving in the road. The trial court granted partial summary judgment as to this theory on October 15, 1998. This appeal, however, does not involve the claims challenged by Elyria's motion for partial summary judgment, which was filed on March 26, 1998, but, rather, deals with Elyria's second motion for summary judgment.

2. The Estate moved to strike pages 5, 6, 15 through 23, 25, 48, 49, 51, 74, and 75 of the investigation report.

August 10, 1999, the trial court denied the Estate's motion to strike evidentiary material and granted summary judgment in favor of Elyria, finding that the "defective design or construction or lack of signage does not constitute a nuisance as a matter of law." The trial court further concluded that the faded, dual left-turn lane extension line does not render the regularly traveled portions of the highway unsafe for the ordinary course of travel, and therefore, does not constitute a nuisance as a matter of law. Even though judgment had been rendered to less than all of the parties in the suit, the trial court found that there was no just reason for delay. See Civ.R. 54(B). This appeal followed.

## II

The Estate asserts two assignments of error. We discuss each in due course.

## A

### First Assignment of Error

"The trial court erred to the substantial prejudice of plaintiffs by granting defendant Elyria's second motion for summary judgment."

The Estate avers that the trial court erred in granting summary judgment in favor of Elyria. We disagree.

### 1

First, the Estate argues that the Political Subdivision Tort Liability Act ("PSTLA"), R.C. 2744.01 *et seq.,* is unconstitutional, pursuant to Section 16, Article I of the Ohio Constitution, because it denies tort victims their right to a remedy by due course of law. We disagree.

The Ohio Supreme Court has stated that legislative enactments are to be afforded a strong presumption of constitutionality. *State v. McDonald* (1987), 31 Ohio St.3d 47, 48, 31 OBR 155, 155–156, 509 N.E.2d 57, 58–59 "[T]he legislation being questioned will not be invalidated unless the challenger establishes that it is unconstitutional beyond a reasonable doubt." *State v. Thompkins* (1996), 75 Ohio St.3d 558, 560, 664 N.E.2d 926, 928.

Section 16, Article I of the Ohio Constitution provides:

"All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay. Suits may be brought against the state, in such courts and in such manner, *as may be provided by law.*" (Emphasis added.)

To support its position, the Estate cites the Supreme Court's recent holding in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 715 N.E.2d 1062, in which the court declared Am.Sub.H.B. No. 350 unconstitutional in its entirety. The Estate directs our attention to the section of *Sheward* dealing with statutes of repose. *Id.* at 475–478, 715 N.E.2d at 1084–1087. In Am.Sub.H.B. No. 350, the General Assembly reenacted statutes of repose, which the Supreme Court had previously held to be violative of the right to a remedy guaranteed by Section 16, Article I of the Ohio Constitution. *Id.* at 476, 715 N.E.2d at 1085–1086. The Supreme Court based its decision in part on the fact that the General Assembly operated outside the boundaries of its constitutional authority and violated the doctrine of separation of powers by refusing to recognize the Supreme Court's holdings on constitutional issues. *Id.* at 478, 715 N.E.2d at 1086–1087.

Apparently, the Estate argues that the General Assembly impermissibly usurped judicial power by enacting R.C. Chapter 2744, after the Supreme Court had abrogated the common-law doctrine of sovereign immunity of political subdivisions for acts of negligence in *Haverlack v. Portage Homes, Inc.* (1982), 2 Ohio St.3d 26, 2 OBR 572, 442 N.E.2d 749, paragraph two of the syllabus. However, this holding applied only in the absence of a statute providing immunity. *Id.;* see, also, *Strohofer v. Cincinnati* (1983), 6 Ohio St.3d 118, 6 OBR 178, 451 N.E.2d 787, syllabus. In fact, the Supreme Court has long held that "the clause permitting suits to be brought against the state is not self-executing, and that the state of Ohio is not subject to suits in tort without the consent of the General Assembly." *Fabrey v. McDonald Police Dept.* (1994), 70 Ohio St.3d 351, 354, 639 N.E.2d 31, 34. The court further stated that "[b]ecause the General Assembly has the power to define the contours of the state's liability, within the constraints of equal protection and due process, the right to sue the state is not fundamental." *Id.* at 355, 639 N.E.2d at 35. The court went on to hold that the immunity in R.C. 2744.02(B)(4) did not involve a serious infringement of a preexisting right, but rather, was "in accord with a traditional common-law principle[;]" therefore, the court held that "R.C. 2744.02(B)(4) does not violate Section 16, Article I of the Constitution of Ohio." *Id.*

In addition, the Supreme Court in *Fahnbulleh v. Strahan* (1995), 73 Ohio St.3d 666, 669, 653 N.E.2d 1186, 1188–1189, addressed the following argument: if R.C. 2744.02 and 2744.03 are constitutional, then innocent injured parties may be left without recourse under the law pursuant to Section 16, Article I of the Ohio Constitution. In response, the Ohio Supreme Court stated:

"It may well be argued that any grant of immunity necessarily impairs some individual's right to seek redress in a court of law, and thus treats some persons harshly. All too frequently, decisionmaking requires difficult balancing of com-

peting interests and equities. *The Ohio Constitution specifies that suits may be brought against the state 'as provided by law.' This language can only mean that the legislature may enact statutes to limit suits if it does so in a rational manner calculated to advance a legitimate state interest.*" (Emphasis added.) *Fahnbulleh,* 73 Ohio St.3d at 669, 653 N.E.2d at 1189.

The court additionally noted that "[t]he Supreme Court of the United States has held that states have a valid interest in preserving the fiscal resources and integrity of political subdivisions." *Id.* at 668–669, 653 N.E.2d at 1188. In determining that R.C. 2744.02(B)(1) does not violate Section 16, Article I or the Equal Protection Clause of the Ohio Constitution, the court noted that "[t]he immunity granted [in R.C. 2744.02 was] narrowly tailored to restrict it to emergency situations." *Id.* at 669, 653 N.E.2d at 1189.

In light of the fact that the Supreme Court has held the legislature may enact statutes to limit suits against a political subdivision and that R.C. 2744.02(B)(3) is rationally related to preserving the fiscal resources of political subdivisions, we hold that R.C. 2744.02(B)(3) does not violate Section 16, Article I of the Ohio Constitution.

2

The Estate argues that the trial court erred in ruling that its claims were barred by governmental immunity as a matter of law. The Estate further avers that summary judgment should not have been granted, as there are genuine issues of material fact as to whether the intersection of Gulf Road and Rte. 57 constituted a nuisance that proximately caused Ritsko's injuries and subsequent death.

Pursuant to Civ.R. 56(C), summary judgment is proper if:

"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

Appellate review of a lower court's entry of summary judgment is *de novo,* applying the same standard used by the trial court. *McKay v. Cutlip* (1992), 80 Ohio App.3d 487, 491, 609 N.E.2d 1272, 1274–1275. The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the

nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. *Id.* Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. *Id.* The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that shows a genuine dispute over the material facts exists. *Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 735, 600 N.E.2d 791, 793–794.

In order to determine whether the trial court erred in granting summary judgment, we must first decide whether Elyria, a political subdivision, can be held liable under R.C. 2744.02(B)(3) for the following: (1) the lack of adequate signaling and warning devices at the intersection, (2) the improper placement of the "Keep Right" sign in the Rte. 57 median so that it could not be seen by northbound Gulf Road left turning traffic, and (3) the deteriorated condition of the dual left-turn lane extension. Elyria maintains that these claims are barred by governmental immunity, pursuant to R.C. Chapter 2744.[3]

"R.C. 2744.02(A)(1) provides that a political subdivision is generally not liable for injury, death, or loss to persons or property incurred in connection with the performance of a governmental or proprietary function." *Harp v. Cleveland Hts.* (2000), 87 Ohio St.3d 506, 509, 721 N.E.2d 1020, 1023.

Under R.C. 2744.01(C)(2)(e), the term "governmental function" includes "[t]he regulation of the use of, and the maintenance and repair of, roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, and public grounds[.]"

"R.C. 2744.02(B) sets forth several exceptions to this broad grant of sovereign immunity. As relevant here, R.C. 2744.02(B)(3) provides that 'political subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, [and] streets * * * within the political subdivisions open, in repair, *and free from nuisance.*'" (Emphasis added and footnote omitted.) *Harp*, 87 Ohio St.3d at 509, 721 N.E.2d at 1023.

In determining a political subdivision's duty under R.C. 2744.02(B)(3) or a municipality's duty under R.C. 723.01, "the focus should be on whether a condition exists within the political subdivision's control that creates a danger for

---

**3.** We will apply the version of R.C. 2744.01 *et seq.* in effect on March 22, 1996, the date of the accident. The operative facts of this case occurred before Am.Sub.H.B. 350, which was held unconstitutional in its entirety in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 715 N.E.2d 1062, became effective on January 27, 1997. See *Harp v. Cleveland Hts.* (2000), 87 Ohio St.3d 506, 509, 721 N.E.2d 1020, 1023, fn. 1.

ordinary traffic on the regularly travelled [*sic* ] portion of the road." *Manufacturer's Natl. Bank of Detroit v. Erie Cty. Road Comm.* (1992), 63 Ohio St.3d 318, 322, 587 N.E.2d 819, 823.

Even if it is determined that a condition may constitute a nuisance, R.C. Chapter 2744 enumerates defenses that the political subdivision can assert to establish nonliability. Elyria raises the defenses set forth in R.C. 2744.03(A)(3) and (5).

"R.C. 2744.03(A)(3) provides immunity to a political subdivision where the act or failure to act by an employee was within the discretion of the employee as to 'policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.' R.C. 2744.03(A)(5) provides that a political subdivision is 'immune from liability if the injury [or] death * * * resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources, unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.' " *Franks v. Lopez* (1994), 69 Ohio St.3d 345, 347–348, 632 N.E.2d 502, 504.

■ In the present case, we find that Elyria cannot be held liable for failing to erect adequate signaling and warning devices, specifically for failing to erect additional warning signs or install an additional center lane line extension to guide left-turning traffic, as these claims are barred by R.C. 2744.01 *et seq.* In *Franks,* the Supreme Court held that while a political subdivision's "failure to maintain the signage already in place may constitute an actionable nuisance claim," design and construction defects and the failure to erect signage do not constitute a nuisance within the meaning of R.C. 2744.02(B)(3). *Franks,* 69 Ohio St.3d at 348–349, 632 N.E.2d at 504–506.[4] In light of the foregoing, we conclude that Elyria is immune from liability under R.C. Chapter 2744 for its alleged

---

4. The Estate primarily relies on *Strohofer v. Cincinnati* (1983), 6 Ohio St.3d 118, 6 OBR 178, 451 N.E.2d 787, to support its proposition that a political subdivision can be held liable for the defective design and placement of traffic control devices. However, the *Strohofer* court was acting during the time immediately after the Ohio Supreme Court had abolished the common-law doctrine of sovereign immunity in *Haverlack v. Portage Homes, Inc.* (1982), 2 Ohio St.3d 26, 2 OBR 572, 442 N.E.2d 749, and prior to the legislative enactment of R.C. 2744.01 *et seq.* The *Strohofer* opinion was predicated in part on the fact that there was no statute granting the political subdivision immunity. *Strohofer,* 6 Ohio St.3d 118, 6 OBR 178, 451 N.E.2d 787, syllabus (holding that "[i]n the absence of a statute providing immunity, the defense of sovereign immunity is not available to a municipal corporation in an action for damages alleged to be caused by the tortious conduct of the municipality"). The Estate avers that *Strohofer* is still applicable because R.C. 2744.02 does not expressly provide absolute immunity for a political subdivision regarding the erection or non-erection of traffic control devices. However, in light of the fact that R.C. 2744.01 *et seq.* was subsequently enacted, we find the *Strohofer* decision was superseded by statute.

failure to install adequate signaling and warning devices at the intersection, as a matter of law.

■ Similarly, we conclude that the trial court correctly determined that the alleged improper placement of the "Keep Right" sign does not constitute a nuisance under R.C. 2744.02(B)(3). The Estate does not argue that the "Keep Right" sign was in a state of disrepair or failed to conform in physical appearance with the parameters set forth in the Ohio Manual of Uniform Traffic Control Devices for Streets and Highways ("MUTCD"), but rather, avers that the sign should have been angled so as to assist left-turning Gulf Road traffic. Although Section 2J–31 of the MUTCD provides that a "Keep Right sign *may* be erected at an angle of up to 45° with the cross street" (emphasis added) to facilitate guidance of left-turning traffic, it is well within Elyria's discretion, as well as within the parameters of the MUTCD, to place the "Keep Right" sign so that it faces westbound Rte. 57 traffic. As the sign was placed within MUTCD-recommended parameters, we hold that the trial court did not err in determining that the placement of the "Keep Right" sign does not constitute a nuisance under R.C. 2744.02(B)(3) and that Elyria is immune from liability as a matter of law. See *Bowers v. Cuyahoga Falls* (Sept. 10, 1997), Summit App. No. 18065, unreported, at 7, 1997 WL 576387 (stating that the city was immune from liability as a matter of law under R.C. 2744.02 on the grounds that the timing of a traffic signal, which complied with MUTCD guidelines and was functioning normally, did not constitute a nuisance under R.C. 2744.02[B][3]).

■ Last, the Estate asserts that the trial court erred in finding that the allegedly faded dual left-turn lane extension line does not constitute a nuisance as a matter of law. We disagree. As noted above, in determining a political subdivision's liability under R.C. 2744.02(B)(3) or a municipality's liability under R.C. 723.01, "the focus should be on whether a condition exists within the political subdivision's control that creates a danger for ordinary traffic on the regularly travelled [*sic*] portion of the road." *Manufacturer's Natl. Bank of Detroit*, 63 Ohio St.3d at 322, 587 N.E.2d at 823. We hold that a dual left-lane extension line in an intersection fully lit by streetlights—which extension line is routinely repainted twice per year, must be repainted in low humidity and warmer temperatures to achieve the best results, and was repainted within six to seven months prior to the accident—does not create a danger for ordinary traffic on the regularly traveled portion of the road, and therefore, does not constitute a nuisance as a matter of law.[5] As such, the Estate's first assignment of error is overruled.

---

5. Elyria also asserted that it should have been granted summary judgment because Ellis's conduct constituted a superseding or intervening cause that broke the chain of causation

B

## Second Assignment of Error

"The trial court erred to the substantial prejudice of plaintiffs by denying plaintiffs' motion to strike Elyria's evidentiary material."

We need not reach the merits of this claim, as it is rendered moot by our disposition of the above assignment of error. This is so because the challenged evidence was not relevant to the trial court's grant or denial of summary judgment or to our review of the trial court's decision. See App.R. 12(A)(1)(c).

## III

Appellants' assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

*Judgment affirmed.*

SLABY and QUILLIN, JJ., concur.

DANIEL B. QUILLIN, J., retired, of the Ninth Appellate District, was sitting by assignment pursuant to Section 6(C), Article IV, Ohio Constitution.

---

between Elyria's alleged negligence and the accident four-tenths of a mile away. Upon a preliminary review, it appeared that this claim had merit; however, Elyria failed to supply the trial court with sufficient admissible evidence for the court to conclude that, as a matter of law, Ellis's driving was a superseding or intervening cause of the accident. Although Elyria proffered the police crash investigation report, the eyewitness accounts of the accident contained within the report constituted inadmissible hearsay. Elyria did not provide the trial court with any additional evidence regarding the eyewitness accounts of the accident. We note that the better practice would be to take depositions or affidavits of witnesses to the accident to support a motion for summary judgment. See Civ.R. 56(C).