**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Vandercar, L.L.C. v. Port of Greater Cincinnati Dev. Auth.*, **Slip Opinion No. 2024-Ohio-1501.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-1501

VANDERCAR, L.L.C., APPELLANT, *v.* PORT OF GREATER CINCINNATI DEVELOPMENT AUTHORITY, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Vandercar, L.L.C. v. Port of Greater Cincinnati Dev. Auth.*, Slip Opinion No. 2024-Ohio-1501.]**

*Civil law—Contracts—R.C. 1343.03(A)—R.C. 4582.22(A)—A port authority created under R.C. 4582.22(A) may be held liable for prejudgment interest under R.C. 1343.03(A) absent an agreement by the parties that provides otherwise—Court of appeals' judgment reversed and cause remanded to trial court.*

(No. 2022-1312—Submitted September 12, 2023—Decided April 23, 2024.)

APPEAL from the Court of Appeals for Hamilton County,

Nos. C-210643, C-210665, and C-220130, 2022-Ohio-3148.

————————————

**FISCHER, J.**

{¶ 1} Appellant, Vandercar, L.L.C. ("Vandercar"), was granted summary judgment on its breach-of-contract claim against appellee, the Port of Greater Cincinnati Development Authority ("the Port"). The issue before this court is whether the Port may be required to pay prejudgment interest under R.C. 1343.03(A). We hold that the Port may be held liable to pay prejudgment interest because the Port, a port authority created under R.C. 4582.22(A), is not exempt from the application of R.C. 1343.03(A), which entitles a creditor to prejudgment interest when the creditor receives a judgment for the payment of money due under a contract. Therefore, we reverse the judgment of the First District Court of Appeals, and we remand the cause to the trial court to evaluate Vandercar's motion for prejudgment interest under the correct standard.

## I. BACKGROUND

{¶ 2} Vandercar entered into a $36 million purchase contract with the owner of the Millennium Hotel in Cincinnati and then assigned its interest in the hotel to the Port. Under the agreement between Vandercar and the Port, the Port would pay Vandercar a $5 million "Additional Vandercar Redevelopment Fee" ("the redevelopment fee") if the Port issued bonds to redevelop the hotel within a year of its acquisition. The Port acquired the hotel and issued acquisition bonds, but it denied that the bonds were for redevelopment of the hotel, so it refused to pay the redevelopment fee.

{¶ 3} Vandercar sued the Port for breach of contract for failing to pay the redevelopment fee. The parties filed competing motions for summary judgment. Vandercar also moved for prejudgment interest under R.C. 1343.03, arguing that the redevelopment fee had become due under the agreement and it was therefore entitled to prejudgment interest.

{¶ 4} The trial court found that Vandercar was entitled to the redevelopment fee and granted Vandercar's motion for summary judgment on that issue. However,

the trial court denied Vandercar's motion for prejudgment interest, concluding that prejudgment interest could not be imposed on the Port since it was "an arm/instrumentality of the state." Hamilton C.P. No. A 2000900, 2022 WL 19559389 (Mar. 15, 2022).

{¶ 5} Both parties appealed to the First District. The First District affirmed the trial court's grant of summary judgment in favor of Vandercar on its breach-of-contract claim concerning the redevelopment fee, and it affirmed the trial court's denial of Vandercar's motion for prejudgment interest.

{¶ 6} Vandercar appealed to this court, asserting two propositions of law concerning the denial of its motion for prejudgment interest: (1) "Port authorities, which have been stripped by the General Assembly of all sovereign immunity, are liable for prejudgment interest," and (2) "When a governmental entity enters into a commercial contract with a private party, the governmental entity is treated as any other party for purposes of assessment of prejudgment interest." We accepted jurisdiction over the appeal. 168 Ohio St.3d 1526, 2023-Ohio-86, 200 N.E.3d 1148.

## II. ANALYSIS

### A. Under the plain language of R.C. 1343.03(A) and 4582.22(A), a port authority may be held liable for prejudgment interest when a judgment has been entered against it for payment of money due under a contract

{¶ 7} This appeal concerns whether the Port, a port authority created under R.C. 4582.22(A), may be held liable under R.C. 1343.03(A) for prejudgment interest when a judgment has been entered against it for payment of money due under a contract. The answer to this question lies within the plain language of the statutes. *See Caldwell v. State*, 115 Ohio St. 458, 466-467, 154 N.E. 792 (1926).

{¶ 8} The General Assembly enacted R.C. Chapter 4582 to permit municipal corporations, townships, and counties to create port authorities. *See* R.C. 4582.02 and 4582.22. A port authority is a "body corporate and politic," R.C. 4582.21(A), that "may sue and be sued, plead and be impleaded," R.C. 4582.22(A).

The powers of a port authority are dictated by R.C. Chapter 4582 and are considered "essential governmental functions of this state, but *no port authority is immune from liability by reason thereof*." (Emphasis added.) R.C. 4582.02 and 4582.22(A). The General Assembly has granted immunity to a port authority's director and members of its board for monetary damages that arise from actions those persons take in the performance of their official duties, with three exceptions: (1) the act or any omission is not made in good faith, (2) the act involves intentional misconduct or a knowing violation of the law, or (3) the act results in the director's gain of an improper personal benefit. R.C. 4582.031 and 4582.271. Other than the limited immunity granted to the director and the members of the board of a port authority, there are no exceptions in R.C. Chapter 4582 to a port authority's liability.

{¶ 9} Under R.C. 1343.03, parties are entitled to prejudgment interest in certain situations, including when a creditor receives a judgment for the payment of money due under a contract, R.C. 1343.03(A). In R.C. 1343.03(D), the General Assembly set forth two exceptions to application of the interest rules contained in R.C. 1343.03. The first exception is that R.C. 1343.03(B), which addresses the method of computing the amount of monetary interest in a matter that has been settled by the parties, "does not apply to a judgment, decree, or order rendered in a civil action based on tortious conduct or a contract or other transaction." R.C. 1343.03(D). And the second exception is that R.C. 1343.03(C), which addresses the method of computing the amount of monetary interest in a matter in which the parties did not make a good-faith effort to settle the action, "does not apply to a judgment, decree, or order rendered in a civil action based on tortious conduct * * * if it is rendered in an *action against the state in the court of claims*." (Emphasis added.) R.C. 1343.03(D). The General Assembly did not include in R.C. 1343.03(D) *any* exception to the application of R.C. 1343.03(A). Had it wanted to include an exception to the application of R.C. 1343.03(A) in civil cases involving

a judgment for payment of money due under a contract, it knew how to do so, as demonstrated by its enactment of R.C. 1343.03(D). *See State v. Droste*, 83 Ohio St.3d 36, 39, 697 N.E.2d 620 (1998) ("Under the general rule of statutory construction *expressio unius est exclusio alterius*, the expression of one or more items of a class implies that those not identified are to be excluded").

{¶ 10} Reading R.C. 1343.03 and 4582.22 together, by their plain language, a port authority may be ordered to pay prejudgment interest under R.C. 1343.03(A). In this case, the Port, as a port authority created under R.C. 4582.22(A), may be held liable for the actions it took pursuant to the powers granted it under R.C. Chapter 4582. R.C. Chapter 4582 does not provide immunity to the Port for those actions; specifically, it does not include a statute that provides immunity against liability for prejudgment interest. Thus, for failing to pay the money due under its contract with Vandercar, the Port may be held liable for prejudgment interest under the plain language of R.C. 1343.03(A), because R.C. 1343.03(D) does not provide any exception to the application of R.C. 1343.03(A). The Port points to no statutory provision that grants it immunity from prejudgment-interest liability by altering the application of R.C. 1343.03(A).

{¶ 11} The Port contends that R.C. 4582.22 must include an express reference to the state to waive a port authority's immunity as a political subdivision of the state. The Port maintains that this point is best illustrated by the General Assembly's enactment of R.C. 2743.18(A)(1), which allows creditors to seek prejudgment interest from the state for actions brought in the Court of Claims only. The Port posits that the General Assembly's decision to allow parties to seek prejudgment interest from the state by using explicit language authorizing prejudgment-interest liability in R.C. 2743.18(A)(1) but not to allow parties to seek prejudgment interest from port authorities by choosing not to use similar language in R.C. 4582.22(A) demonstrates that the General Assembly did not intend to allow parties to seek prejudgment interest from port authorities. But this argument fails

because it ignores the existence of express exceptions to a port authority's liability under R.C. 4582.271 and to application of the interest rules under R.C. 1343.03(D).

{¶ 12} We must give effect to the words used in the statutes and refrain from adding or deleting words or phrases to the language chosen by the General Assembly. *See Hulsmeyer v. Hospice of Southwest Ohio, Inc.*, 142 Ohio St.3d 236, 2014-Ohio-5511, 29 N.E.3d 903, ¶ 26. We will not create an exception to a statute where none exists. Because no exception to the application of R.C. 1343.03(A) exists, under the plain language of R.C. 1343.03 and 4582.22, the Port may be held liable for prejudgment interest under R.C. 1343.03(A).

## B. We will not apply the *Beifuss* rule in this case

{¶ 13} The Port encourages us to reject the plain-language analysis because that analysis was rejected by this court when addressing the prejudgment-interest liability of another type of political subdivision—boards of education—in *Beifuss v. Westerville Bd. of Edn.*, 37 Ohio St.3d 187, 525 N.E.2d 20 (1988), and *State ex rel. Stacy v. Batavia Local School Dist. Bd. of Edn.*, 105 Ohio St.3d 476, 2005-Ohio-2974, 829 N.E.2d 298, ¶ 62. In *Beifuss*, this court held that "[a] public school board of education is not liable for the payment of prejudgment interest on an award of back pay absent a statute requiring such payment or an express contractual agreement to make such payment." *Beifuss* at syllabus. While the rule announced in *Beifuss* and applied in *Stacy* involved boards of education, the Port argues that both a port authority and a board of education are "bod[ies] politic and corporate" with the capability to sue and be sued and that both also perform essential governmental functions, R.C. 3313.17 and 4582.22(A), and therefore should be treated the same under the *Beifuss* rule.

{¶ 14} Vandercar acknowledges that the *Beifuss* rule supports the argument that prejudgment interest would not apply to an award of back pay against a board of education without an express statute authorizing such an award, but Vandercar maintains that this court's decision in *Beifuss* is an outlier and that the *Beifuss* rule

6

has not been adopted in cases other than those involving boards of education and awards for prejudgment interest relating to back pay. Vandercar argues that the plain language of the statutes at issue here and this court's prior holdings concerning application of the doctrine of sovereign immunity would require us to reject the rationale applied in *Beifuss* and hold that the Port may be held liable for prejudgment interest.

{¶ 15} We agree with Vandercar that the *Beifuss* rule is inapplicable in this case. While we agree with the Port that port authorities and boards of education are both "bod[ies] politic and corporate" with the capability to sue and be sued and that both also perform essential governmental functions, R.C. 3313.17 and 4582.22(A), there is a key difference between the two political subdivisions.

{¶ 16} In R.C. 4582.22(A), the General Assembly specifically denies port authorities immunity related to their essential governmental functions. Consequently, a port authority is not entitled to immunity unless expressly provided by statute. No such statement pertaining to immunity is included in R.C. 3313.17 concerning boards of education. Therefore, because R.C. 4582.22(A) expressly waives a port authority's immunity relating to any governmental function it performs—such as entering into a contract pursuant to its powers enumerated throughout R.C. Chapter 4582—it is an express statute authorizing a court to hold a port authority liable for prejudgment interest. Because R.C. 4582.22(A) waives all immunity for a port authority, the *Beifuss* rule is inapplicable here. And because the Port may be held liable for its actions taken under R.C. Chapter 4582 and there are no exceptions to the application of R.C. 1343.03(A), the Port may be required to pay Vandercar prejudgment interest under R.C. 1343.03(A).

{¶ 17} But even assuming arguendo that a port authority and a board of education can be treated similarly under the *Beifuss* rule, we cannot ignore that there are several issues with this court's analysis and rationale in *Beifuss*. *Beifuss* and its progeny are not in line with this court's prior holdings concerning

application of the doctrine of sovereign immunity. This is made apparent when we review the line of cases this court relied on when deciding *Beifuss* and those that followed our decision in *Beifuss*.

{¶ 18} To set the stage, we acknowledge that the state is entitled to sovereign immunity and that since 1912, the state has been capable of being sued only as provided by law. Article I, Section 16, Ohio Constitution; *see Raudabaugh v. State*, 96 Ohio St. 513, 514, 118 N.E. 102 (1917). It is only when liability is expressly authorized by statute that liability may be imposed on the state. *Raudabaugh* at 514; *see also State ex rel. Parrott v. Bd. of Public Works*, 36 Ohio St. 409 (1881), paragraphs three and four of the syllabus.

{¶ 19} Prior to the 1912 amendment of Article I, Section 16 of the Ohio Constitution, this court explained that while a board of education is a "bod[y] politic and corporate," it is a quasicorporation and an arm of the state for the promotion of education that could not be held liable under tort law. *Cincinnati Bd. of Edn. v. Volk*, 72 Ohio St. 469, 480-483, 74 N.E. 646 (1905). However, after the amendment, this court determined that once a board of education was "clothed with the capability to sue and be sued, it [wa]s thereby rendered amenable to the laws governing litigants." *State ex rel. Springfield City School Dist. Bd. of Edn. v. Gibson*, 130 Ohio St. 318, 321, 199 N.E. 185 (1935). Thus, this court held that "[w]here a statute *does not expressly exempt* a subordinate political subdivision from its operation, the exemption therefrom *does not exist*." (Emphasis added.) *Id.* at paragraph three of the syllabus. Applying that rule, this court determined that a board of education would be subject to a statute of limitations like any other litigant. *Id.* at paragraph two of the syllabus.

{¶ 20} After *Gibson* was decided, this court again acknowledged that "a board of education is a body corporate and politic of the state of Ohio, and, therefore, a suit against the board is plainly a suit against the government and its property." *Brown v. Monroeville Local School Dist. Bd. of Edn.*, 20 Ohio St.2d 68,

8

70, 253 N.E.2d 767 (1969), fn. But in reconciling the decisions in *Volk* and *Gibson*, this court acknowledged that a board of education's capability to sue and be sued "was limited to legal actions of the kind that would relate to the other capabilities conferred on the board by the statute," such as contracting and matters relating to real property. *Brown* at 73. Because there was no statute creating liability in tort and there was no liability at common law, a board of education could not be held liable for a tort, as stated in *Volk*. *Brown* at 73. However, because a board of education could be sued and had the power to hold real property, and because the board in *Brown* did not show that the statute of limitations was inapplicable, this court held that a board of education could be sued for adverse possession. *Id*.

{¶ 21} In *Beifuss*, this court seemingly backtracked on the position set forth in *Gibson* and *Brown* by holding that a public-school board of education could not be held liable for prejudgment interest on damages assessed against it in a contract action. *Beifuss*, 37 Ohio St.3d at 188, 525 N.E.2d 20. This court concluded that without an express statute requiring that a board of education pay prejudgment interest or an express contractual agreement to make such payment, a board of education could not be required to pay prejudgment interest on an award for back pay. *Id.* at 189. In a separate opinion, Justice Douglas noted that this court's holding in *Beifuss* was contrary to R.C. 3313.17, which allows a board of education to sue and be sued and engage in the creation of contracts, and contrary to the decision in *Gibson*, in which this court determined that a board of education, once clothed with the capability to be sued, could be treated the same as a private litigant. *Beifuss* at 192 (Douglas, J., concurring in part and dissenting in part). That same year, we applied the *Beifuss* rule and reversed an award of interest on back pay to a teacher. *State ex rel. Brown v. Milton-Union Exempted Village Bd. of Edn.*, 40 Ohio St.3d 21, 28, 531 N.E.2d 1297 (1988).

{¶ 22} But three years later, this court readopted the position stated in *Gibson*, finding that R.C. 1343.03(A) renders a board of education liable for

postjudgment interest. *State ex rel. Tavenner v. Indian Lake Local School Dist. Bd. of Edn.*, 62 Ohio St.3d 88, 90-91, 578 N.E.2d 464 (1991). Justice Douglas, in another separate opinion, noted the inconsistency between this court's decision in *Beifuss* concerning awards of prejudgment interest and the decision in *Tavenner* concerning awards of postjudgment interest, given that both cases, though dealing with different types of interest, were governed by the same statutory provision—R.C. 1343.03(A)—and dealt with the same type of political subdivision—boards of education. *Tavenner* at 91 (Douglas, J., concurring).

{¶ 23} The discrepancy outlined in Justice Douglas's concurring opinion in *Tavenner* was discussed in *Ziegler v. Wendel Poultry Servs., Inc.*, 67 Ohio St.3d 10, 18, 615 N.E.2d 1022 (1993), *overruled on other grounds by Fidelholtz v. Peller*, 81 Ohio St.3d 197, 690 N.E.2d 502 (1998). In *Ziegler*, we noted that *Beifuss* was a contract case in which we declined to expand a board of education's contractual liability without express legislation authorizing such liability or an agreement by the parties. *Ziegler* at 18-19. But yet in *Ziegler*, we walked back this court's decision in *Beifuss* with the following determination: "If school boards *should be treated like other litigants* and can have postjudgment interest assessed against them pursuant to R.C. 1343.03(A), then they should be subject to prejudgment interest under R.C. 1343.03(C), if they do not make a good faith effort to settle." (Emphasis added.) *Ziegler* at 19. We further limited application of the *Beifuss* rule in *State ex rel. Carver v. Hull*, 70 Ohio St.3d 570, 579, 639 N.E.2d 1175 (1994), holding that prejudgment interest could have been available if the matter had accrued in contract or if one of the parties had failed to make a good-faith effort to settle the case.

{¶ 24} In another attempt to further distinguish *Beifuss*, this court doubled down on the judicially created justification for treating prejudgment-interest awards differently from postjudgment-interest awards under R.C. 1343.03 when deciding *Judy v. Bur. of Motor Vehicles*, 100 Ohio St.3d 122, 2003-Ohio-5277, 797 N.E.2d

45. In that case, we explained that the "distinction between prejudgment and postjudgment interest [was] born of good reason," being based on the policy concerns behind the two types of interest, *id.* at ¶ 32, none of which were acknowledged by the plain language of the statute. We held:

> *Beifuss* and *Tavenner* make clear two propositions of law: a school board is (1) a state agency for purposes of * * * litigation [over postjudgment interest] and (2) liable for postjudgment interest under R.C. 1343.03. These two propositions, taken together, stand for the principle that the state is liable for postjudgment interest under R.C. 1343.03.

*Judy* at ¶ 33. We thus remained firm in our position that based on policy preference, a board of education could be held liable for postjudgment interest, implying that a board of education would not be liable for prejudgment interest. *See id.* at ¶ 32-33.

{¶ 25} This court later affirmed the holding in *Beifuss* that a board of education would not be liable for prejudgment interest under R.C. 1343.03(A). In denying a request for prejudgment interest on a back-pay award in *Stacy*, we relied on our prior determination that "[a] public school board of education is not liable for the payment of prejudgment interest on an award of back pay absent a statute requiring such payment or an express contractual agreement to make such payment." 105 Ohio St.3d 476, 2005-Ohio-2974, 829 N.E.2d 298, at ¶ 61, citing *Beifuss* at syllabus.

{¶ 26} Reviewing these cases, it is apparent that *Beifuss* is an outlier and was wrongly decided. *Beifuss* ignored the plain language of R.C. 1343.03(A) that imposes liability for interest in certain cases, including contract cases. Am.Sub.H.B. No. 189, Section 1, 139 Ohio Laws, Part I, 2034-2035. And it contradicted the statutory waiver of a board of education's immunity relating to

11

contract disputes. *See Gibson*, 130 Ohio St. 318, 199 N.E. 185, at paragraphs one, two, and three of the syllabus; *Brown*, 20 Ohio St.2d at 73, 253 N.E.2d 767. As we stated in *Gibson*, once boards of education were clothed with the capability to sue and be sued, they were to be treated as any other litigant. *Gibson* at 321.

{¶ 27} It is also apparent that the *Beifuss* rule defies practical workability. It is difficult to comprehend why we would hold that a board of education may be liable for postjudgment interest under R.C. 1343.03(A) but not prejudgment interest under the same provision when both holdings rely on the same language in R.C. 3313.17 that authorizes boards of education to sue and be sued and enter into contracts. The *Beifuss* rule required this court to apply R.C. 1343.03(A) differently depending on the type of interest—prejudgment or postjudgment—being sought even though there is no language in the statute that permits such a distinction. This court in *Beifuss* essentially created an exception for boards of education where none existed at the time by failing to recognize that the General Assembly had already waived immunity for boards of education, as recognized in *Gibson*, and did not need to expressly do so again in another statute.

{¶ 28} Simply put, the rationale announced in *Beifuss* makes little sense and cannot be reconciled with the plain-language analysis we used in *Gibson* and *Tavenner*. Thankfully, the *Beifuss* rule has been narrowly applied, its application having been limited to cases involving interest on back-pay awards against boards of education. We have applied the *Beifuss* rule only twice, once in 1988 and again in 2005. *See Milton-Union Exempted Village Bd. of Edn.*, 40 Ohio St.3d at 28, 531 N.E.2d 1297; *Stacy*, 105 Ohio St.3d 476, 2005-Ohio-2974, 829 N.E.2d 298, at ¶ 61. And even though the *Beifuss* rule has existed since 1988, it has been on shaky ground, as indicated in this court's decisions in *Tavenner* and *Ziegler*.

{¶ 29} We should no longer turn a blind eye and further extend the rule announced in *Beifuss*, because that rule conflicts with statutes enacted by the General Assembly and this court's prior holdings concerning application of the

doctrine of sovereign immunity. To uphold and further extend the *Beifuss* rule would be to invade the province of the General Assembly to write laws and make policy decisions. *See Pratte v. Stewart*, 125 Ohio St.3d 473, 2010-Ohio-1860, 929 N.E.2d 415, ¶ 54 (declining to invade the province of the legislature by rewriting a statute to allow for a tolling provision). Furthermore, to extend this court's holding in *Beifuss* would be to create a rule that goes against the common law and benefits the party that breached the contract while depriving the injured party of complete reparation. *See Lawrence RR. Co. v. Cobb*, 35 Ohio St. 94, 98-99 (1878) (the injured party should be made whole, which may include an award of interest when the wrongdoer withheld reparation that ought to have been promptly made). For those reasons, the *Beifuss* rule will not be applied in this case. Instead, we apply the basic principle announced in *Gibson* that "[w]here a statute *does not expressly exempt* a subordinate political subdivision from its operation, the exemption therefrom *does not exist*" (emphasis added), 130 Ohio St. 318, 199 N.E. 185, at paragraph three of the syllabus.

**{¶ 30}** In this case, the lower courts agreed that the Port had breached its agreement with Vandercar and therefore owed Vandercar the redevelopment fee. The Port agrees that it is a port authority created under R.C. 4582.22(A) and thus has the capability to sue and be sued and may be held liable for actions taken by authority of the powers granted it by law. Because no statute grants a port authority immunity, the Port may be held liable for prejudgment interest under R.C. 1343.03(A) since a judgment was entered against it for payment of money due under a contract that it entered into consistent with its powers under R.C. Chapter 4582. *See Gibson* at paragraph three of the syllabus. The lower courts erred in denying Vandercar's motion for prejudgment interest based on their conclusions that the Port, as an arm or instrumentality of the state, was entitled to sovereign immunity.

### III. CONCLUSION

**{¶ 31}** The General Assembly provided that a port authority may be held liable for actions taken under R.C. Chapter 4582 and that a port authority cannot claim immunity against liability for those actions simply because those actions are considered essential governmental functions. R.C. 4582.22(A). R.C. 1343.03(A) entitles a creditor to prejudgment interest on an award for money due under a contract, and no exceptions to that liability are granted to anyone under the statute, *see* R.C. 1343.03(D). Therefore, because R.C. 1343.03 does not expressly exempt a port authority from its operation, the Port may be held liable for prejudgment interest on the money due Vandercar under its agreement. *See Gibson* at paragraph three of the syllabus.

**{¶ 32}** Since the plain language of the statutes resolves the prejudgment-interest issue, we decline to review the second proposition of law. We also decline to apply our holding in *Beifuss* to this case given the differences between the language of R.C. 4582.22(A) that governs port authorities and the language of R.C. 3313.17 that governs boards of education and given the inconsistencies in this court's application of R.C. 3313.17 and 1343.03.

**{¶ 33}** We reverse the First District Court of Appeals' judgment, and we remand the cause to the trial court to rule on Vandercar's motion for prejudgment interest under the correct standard.

Judgment reversed

and cause remanded.

KENNEDY, C.J., and DEWINE, DONNELLY, and BRUNNER, JJ., concur.

STEWART, J., dissents, with an opinion joined by POWELL, J.

MIKE POWELL, J., of the Twelfth District Court of Appeals, sitting for DETERS, J.

————————————

**STEWART, J., dissenting.**

{¶ 34} I agree with the majority that this appeal can be resolved by the plain language of the statutes, but I would reach a different conclusion given that the relevant statutes do not expressly permit appellant, Vandercar, L.L.C., to recover prejudgment interest from appellee, the Port of Greater Cincinnati Development Authority. Additionally, two aspects of the majority's opinion might result in confusion. For these reasons, I respectfully dissent.

{¶ 35} First, the majority opinion introduces confusion by incorrectly stating that R.C. 4582.22(A) "waives all immunity for a port authority," majority opinion, ¶ 16, and that "no statute grants a port authority immunity," *id.* at ¶ 30. But R.C. Chapter 2744 expressly provides political subdivisions with immunity from tort liability as described in that chapter. And R.C. 2744.01(F) includes in the definition of "political subdivision" a "port authority created pursuant to section 4582.02 * * * of the Revised Code." *See also State ex rel. Toledo Blade Co. v. Toledo-Lucas Cty. Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221, ¶ 2 ("Respondent, the Toledo-Lucas County Port Authority, is a political subdivision of the state of Ohio that was created in 1955 and operates under R.C. Chapter 4582").

{¶ 36} Like a port authority created under R.C. 4582.02, the port authority in this case, which was created under R.C. 4582.22, bears the same hallmarks of a political subdivision that is subject to tort-liability immunity as described in R.C. 2744.01. For example, the statutory language describing a port authority's creation under R.C. 4582.02 is nearly identical to the language used to describe a port authority's creation under R.C. 4582.22; both statutes provide that port authorities are bodies "corporate and politic which may sue and be sued, plead and be impleaded, and [have] the powers and jurisdiction" enumerated in specific statutes. *Compare* R.C. 4582.02 *with* R.C. 4582.22. Port authorities created under these statutes also exercise powers that are deemed to be "essential governmental

functions of this state," but they are not "immune from liability by reason thereof." *Compare* R.C. 4582.02 *with* R.C. 4582.22; s*ee also* 1990 Ohio Atty.Gen.Ops. No. 90-060, at 2-259. Indeed, the majority opinion also refers to port authorities as political subdivisions. *See* majority opinion at ¶ 15.

{¶ 37} Because political subdivisions enjoy certain immunity from liability for tort claims as set forth in R.C. Chapter 2744 and because port authorities are political subdivisions as that term is defined in R.C. Chapter 2744, it cannot be said, as the majority does, that R.C. 4582.22 waives "all immunity" for a port authority, majority opinion at ¶ 16.

{¶ 38} Additionally, the General Assembly has stated that the language in R.C. 4582.22(A) that says a port authority "may sue and be sued" does not waive a port authority's immunity for civil liability. *See* R.C. 2744.02(B)(5). Thus, the language in R.C. 4582.22(A) that says a port authority is a "body corporate and politic which may sue and be sued" and that "the powers conferred upon [a port authority] shall be deemed to be essential governmental functions of this state, but no port authority is immune from liability by reason thereof," cannot mean what the majority says it means.

{¶ 39} But what did the General Assembly mean when it stated in R.C. 4582.22(A) that a port authority is not immune from liability by reason of its exercising essential governmental functions of the state? To answer that question, we look to the sovereign-immunity law that existed at the time the statute was enacted.

{¶ 40} Prior to the enactment of R.C. 4582.22 in 1982, *see* Am.Sub.H.B. No. 439, 139 Ohio Laws, Part II, 2742, 2755 ("H.B. 439"), this court explained that "[t]he long established common law rule in Ohio is that the state, being sovereign, is not amenable to suit in its own courts without its express consent." *Schenkolewski v. Cleveland Metroparks Sys.*, 67 Ohio St.2d 31, 33, 426 N.E.2d 784 (1981). We explained that Article I, Section 16 of the Ohio Constitution was

amended in 1912 to provide that " '[s]uits may be brought against the state, in such courts and in such manner, as may be provided by law.' " *Schenkolewski* at 34, quoting Article I, Section 16, Ohio Constitution. That constitutional provision was determined not to be self-executing and since then "the principle has been steadfastly reiterated that statutory express consent is required before the state or its instrumentalities [are] amenable to suit." *Id.* at 35.

{¶ 41} In 1975, the Court of Claims Act, R.C. 2743.01 et seq., took effect. *See* Am.Sub.H.B. No. 800, 135 Ohio Laws, Part II, 869, 871 ("H.B. 800"). By that enactment, the General Assembly consented to the state's being sued in the Court of Claims, thereby waiving the state's sovereign immunity within the scope of that statutory scheme. *See id.*; *Schenkolewski* at 33-34. But "political subdivisions" were excluded from the Court of Claims Act. *See* former R.C. 2743.01(A) (excluding "political subdivisions" from the definition of "state") and (B) (defining "political subdivisions" as "municipal corporations, townships, villages, counties, school districts, and all other bodies corporate and politic responsible for governmental activities only in geographic areas smaller than that of the state *to which the sovereign immunity of the state attaches*" [emphasis added]), H.B. 800, 135 Ohio Laws, Part II, at 871; *Schenkolewski* at 34. At that time, our case law generally recognized that political subdivisions enjoyed immunity from liability (at least for tort claims) arising from its performance of governmental functions but not its performance of proprietary functions. *See Schenkolewski* at 36-38.

{¶ 42} When the General Assembly enacted R.C. 4582.22(A) in 1982, that provision stated, "The exercise by such port authority of the powers conferred upon it shall be deemed to be essential governmental functions of this state, but no port authority is immune from liability by reason thereof." H.B. 439, 139 Ohio Laws, Part II, at 2755. This statutory language provided the necessary consent by the state to abrogate any common-law tort immunity for port authorities at that time.

{¶ 43} Nonetheless, in 1985, after a series of decisions from this court effectively eliminated sovereign-immunity protections for political subdivisions, the General Assembly enacted R.C. Chapter 2744 to expressly restore immunity from tort liability to the state's political subdivisions within the scope described in that Chapter. *See* Am.Sub.H.B. No. 176, 141 Ohio Laws, Part I, 1699, 1703-1724 ("H.B. 176"); *see also* Legislative Service Commission Analysis of H.B. 176. When enacted, R.C. 2744.02(B)(5) included the following statement:

> Liability shall not be construed to exist under another section of the Revised Code merely because a responsibility is imposed upon a political subdivision or *because of a general authorization that a political subdivision may sue and be sued*.

(Emphasis added.) H.B. 176, 141 Ohio Laws, Part I, at 1713. A materially similar statement remains in today's version of R.C. 2744.02(B)(5). For these reasons, the inclusion of the phrase "may sue and be sued" and the reference to a waiver of immunity in R.C. 4582.22(A) cannot be read as constituting a waiver of *all* immunities for a port authority. The majority's statements to the contrary risk introducing unnecessary confusion into this area of the law.[1]

{¶ 44} Moreover, the port authority here is not arguing that it is immune from contractual liability. Thus, even if the phrase in R.C. 4582.22(A) stating that a port authority is not immune from liability for the exercise of its governmental functions means that a port authority is not immune from liability for breach of contract, that is irrelevant here because the issue presented in this case is a narrower one—namely, whether the port authority must pay prejudgment interest on the

---

1. To be sure, R.C. 2744.09(A) states that R.C. Chapter 2744 does not apply to civil actions against political subdivisions for contractual liability. But the majority has not distinguished between tort liability and contractual liability in stating that R.C. 4582.22(A) waives "all immunity" for a port authority, majority opinion at ¶ 16.

contract damages it owes. We do not find the answer to that issue in the language of R.C. 4582.22(A), which the majority relies on.

{¶ 45} The second way the majority introduces confusion here is by overruling, by implication, this court's holding in *Beifuss v. Westerville Bd. of Edn.*, 37 Ohio St.3d 187, 525 N.E.2d 20 (1988)—an unnecessary action given the majority's purported reliance on a plain-language statutory-interpretation analysis. As the majority recognizes, this court affirmed the holding in *Beifuss* in 2005 in *State ex rel. Stacy v. Batavia Local School Dist. Bd. of Edn.*, 105 Ohio St.3d 476, 2005-Ohio-2974, 829 N.E.2d 298, ¶ 62. Nonetheless, despite concluding that "the *Beifuss* rule is inapplicable in this case," majority opinion at ¶ 15, and that there is a "key difference" between port authorities and boards of education, *id.* at ¶ 15, the majority engages in a lengthy criticism of *Beifuss*, ultimately deciding that "*Beifuss* is an outlier and was wrongly decided," majority opinion at ¶ 26, and that it "defies practical workability," *id.* at ¶ 27. Rather than simply concluding that *Beifuss* is distinguishable from and inapplicable to this case, the majority applies this court's holding in *State ex rel. Springfield City School Dist. Bd. of Edn. v. Gibson*, 130 Ohio St. 318, 199 N.E. 185 (1935)—a case that is also about a board of education and was decided more than 50 years before *Beifuss*. But *Gibson* also addresses whether sovereign immunity enjoyed by the state extends to a board of education. So if this court's holding in *Beifuss* is inapplicable here, as the majority states, because there is a difference between port authorities and boards of education, then *Gibson* is also inapplicable. In this way, the majority implicitly overrules *Beifuss* by dicta, only to adopt by dicta a one-syllabus paragraph from *Gibson*.

{¶ 46} Additionally, the majority states that "to extend this court's holding in *Beifuss* would be to create a rule that goes against the common law and benefits the party that breached the contract while depriving the injured party of complete reparation." Majority opinion at ¶ 29. But it is unclear what aspect of the common law the majority is referring to. If the majority means the common law on damages

for contractual liability, it should be noted that the port authority in this case is not challenging the damages it owes for its contractual liability. If the majority means the common law on recovery of interest on a debt, it should be noted that interest recovery has been a creature of statute in Ohio—not of the common law—since at least 1824.[2] And, as this court noted in *Beifuss* when citing a line of cases dating back to 1881, it has been well established in this state that absent a statute or a promise to pay it, " 'interest cannot be adjudged against the state for delay in the payment of money,' " *Beifuss* at 188-189, quoting *State ex rel. Parrott v. Bd. of Pub. Works*, 36 Ohio St. 409 (1881), paragraph four of the syllabus; *see also State ex rel. Nixon v. Merrell*, 126 Ohio St. 239, 246, 185 N.E. 56 (1933); *Lewis v. Benson*, 60 Ohio St.2d 66, 67, 397 N.E. 2d 396 (1979); *State ex rel. Home Care Pharmacy, Inc. v. Creasy*, 67 Ohio St.2d 342, 344, 423 N.E. 2d 482 (1981); *State ex rel. Montrie Nursing Home, Inc. v. Creasy*, 5 Ohio St.3d 124, 126-127, 449 N.E. 2d 763 (1983).

{¶ 47} The *Gibson* rule that the majority cites—that "[w]here a statute does not expressly exempt a subordinate political subdivision from its operation, the exemption therefrom does not exist," *Gibson* at paragraph three of the syllabus— does not recognize political-subdivision sovereign immunity. *See id.* at 322 (noting that sovereign immunity is a privilege to be asserted only by or on behalf of the

2. The original enactment of the law setting a rate of interest when such rate has not been stipulated to by the parties appears to have been in 1824 in "An Act Fixing the Rate of Interest," which stated "[t]hat all creditors shall be entitled to receive interest on all money, after the same shall become due," 29 Ohio Laws 451. In 1879, Ohio's general statutes were reclassified for publication as Revised Statutes, *see* H.B. No. 1083, 76 Ohio Laws 192, 195-196, and the law setting the rate of interest when not otherwise stipulated to could be found in R.S. 3181. When the Revised Statutes were reclassified in 1910 as the General Code, *see* S.B. No. 31, 98 Ohio Laws 221; H.B. No. 148, 101 Ohio Laws 39; and H.B. No. 131, 102 Ohio Laws 46, the interest-rate-setting law could be found at G.C. 8305. And in 1953, when Ohio's statutes were recodified as the Ohio Revised Code, *see* Am.H.B. No. 1, 125 Ohio Laws 7, the interest-rate-setting law could be found in R.C. 1309.03. In 1962, the General Assembly enacted R.C. 1343.03, the text of which was analogous to that of R.C. 1309.03. *See* Am.S.B. No. 5, 129 Ohio Laws 13, 173.

sovereign and explaining that "[t]he extension of the privileges of sovereignty to others than the general and state governments does not find favor in enlightened jurisdictions"). But, since *Gibson* was decided in 1935, the law in this state has at times recognized such immunity, while at other times it has not, *see generally Schenkolewski*, 67 Ohio St.2d at 33-35, 426 N.E.2d 784, until, as noted above, the General Assembly codified political-subdivision sovereign immunity against liability for tort claims in R.C. Chapter 2744. *See* Legislative Service Commission Analysis of H.B. 176. This is not to criticize the holding in *Gibson*, which presumably aptly reflected the state of the law when *Gibson* was decided, but it is intended to point out that the majority's decision to elevate the holding in *Gibson* over the holding in *Beifuss* does no greater honor to the common law than what the majority criticizes *Beifuss* of doing.

{¶ 48} Finding no persuasive reason to depart from this court's more recent precedent, I would rely on and apply the holding in *Beifuss* to this case. As previously noted, *Beifuss* cited the "well-established" law that " '[i]n the absence of a statute requiring it, or a promise to pay it, interest cannot be adjudged against the state for delay in the payment of money.' " 37 Ohio St.3d at 188-189, 525 N.E.2d 20, quoting *Parrott* at paragraph four of the syllabus. Additionally, in *Beifuss* this court acknowledged that the functions of a public-school board of education more closely resembled those of a state entity. *See Beifuss* at 189. For example, in *Beifuss*, this court recognized that a public school board's duties and powers are extensively defined in Title 33 of the Revised Code and therefore are " 'managed and controlled by the dictates of the General Assembly.' " *Beifuss* at 189, quoting *Thaxton v. Medina City Bd. of Edn.*, 21 Ohio St.3d 56, 57, 488 N.E.2d 136 (1986). We also recognized the following in *Beifuss*:

> Judicial intrusion into the matters of contracting parties is an
> extreme measure which should occur sparingly, if at all. We find

that such an expansion of a public school board's contractual liability should be created through clearly expressed legislation by the General Assembly or by the parties themselves at the bargaining table.

(Footnote omitted.) *Beifuss* at 190.

{¶ 49} Here, the General Assembly has extensively enumerated the powers and duties of a port authority in R.C. Chapter 4582, and it has expressly stated that port authorities are "necessary for the welfare of the state and its inhabitants," R.C. 4582.59. Although a municipal corporation may create a port authority as described in R.C. 4582.22, a port authority is also a distinct entity from a municipal corporation. A port authority is exempt from payment of property taxes. *See* R.C. 4582.46. A port authority may exercise the right of eminent domain. *See* R.C. 4582.31(A)(17). Although a port authority may enter into contracts, in some instances a port authority is required to follow the competitive-bidding process for entering into contracts as outlined by the General Assembly. *See* R.C. 4582.31(A)(18). A port authority may levy a property tax within its jurisdiction if approved by the qualified electors in a primary or general election, and its board of directors becomes the taxing authority if such a levy is approved. *See* R.C. 4582.40. Additionally, the board of directors of a port authority may contract with a county's prosecuting attorney to obtain legal services. *See* R.C. 4582.23.

{¶ 50} In *Beifuss*, based on the characteristics of a public school board and given the well-established rule against adjudging interest against the state for delay of payment in the absence of a statute or contractual provision allowing it, this court concluded that the school board was not required to pay prejudgment interest on the back-pay awards in that case, because there was no statutory authority requiring it to do so nor any contractual agreement between the parties to do so. *Beifuss* at 190. Applying the holding in *Beifuss* here leads to the same conclusion.

Ultimately, the majority relies on the absence of language in R.C. 1343.03(A) that would *except* a port authority from liability for prejudgment interest. But we should, instead, look for *authority* in the statutes that allows the recovery of prejudgment interest from a port authority—language like that which the General Assembly used in R.C. 2743.18 for the recovery of prejudgment interest in cases filed against the state in the Court of Claims.

**{¶ 51}** R.C. 1343.03 is a general statute that fixes a rate of interest when the parties to a contract have not otherwise stipulated to a rate. Nothing in R.C. 1343.03 expressly permits the recovery of prejudgment interest from a port authority. And despite the General Assembly's extensive description of a port authority's powers and limitations in R.C. Chapter 4582, nothing in that statutory scheme expressly permits the recovery of prejudgment interest from a port authority. Having found no statutory authority that requires a port authority to pay prejudgment interest, and there being no assertion by the parties that an allowance for prejudgment interest exists in their contractual provisions, I would hold that the port authority here may not be assessed prejudgment interest and would therefore affirm the judgment of the First District Court of Appeals.

POWELL, J., concurs in the foregoing opinion.

————————————

Taft Stettinius & Hollister, L.L.P., W. Stuart Dornette, Russell S. Sayre, and Beth A. Bryan, for appellant, Vandercar, L.L.C.

Calfee, Halter & Griswold, L.L.P., David T. Bules, Mitchell G. Blair, Matthew A. Chiricosta, and Xin (Sage) Wen for appellee, The Port of Greater Cincinnati Development Authority.

Squire Patton Boggs (U.S.), L.L.P., Scott A. Kane, Shams H. Hirji, and Gregory R. Daniels, urging affirmance for amici curiae Columbus-Franklin County Finance Authority, Development Finance Authority of Summit County, Dayton-Montgomery County Port Authority, and Toledo-Lucas County Port Authority.

_____